OPINION OF THE COURT
Hancock, Jr., J.
Plaintiff[1] rode his bicycle into a chain strung across Hudson Park Road at the entrance of a municipal park in the City of New Rochelle, supervised by its Department of Recreation. He has recovered a jury verdict against the city for his injuries, based on its negligence in the act of placing the chain and in failing to give adequate warnings of the hazardous condition created by its presence. There is no claim that the city was *449 guilty of any willful or malicious conduct or omission. In its appeal the city contends that the trial court erred in refusing to dismiss plaintiff’s complaint under General Obligations Law § 9-103, which exempts an owner or possessor of premises from liability to anyone coming on the premises for the purpose of engaging in one of several enumerated activities (including bicycle riding) except for a “willful or malicious failure to guard, or to warn against, a dangerous condition, use, structure or activity.”
The area in issue is a suburban, regulated park, with a Recreation Supervisor and approximately 24 employees. It includes a public parking area, guard house, beach, park for sitting and lounging, several pavilions, and a place to eat.
We agree with the decision of the trial court and the Appellate Division in its affirmance and, for reasons stated hereafter, hold that General Obligations Law § 9-103 does not apply to a claim of the type presented: one based on the failure of a municipality to fulfill its duty in the operation and maintenance of a supervised public park and recreational facility such as the one here.
I
Under General Obligations Law § 9-103: “an owner[2] * * * of premises, whether or not posted as provided in * * * the environmental conservation law, owes no duty to keep the premises safe for entry or use by others for hunting, fishing * * * canoeing, boating, trapping, hiking, cross-country skiing, tobogganing, sledding, speleological activities, horseback riding, bicycle riding, hang gliding, motorized vehicle operation for recreational purposes, snowmobile operation, cutting or gathering of wood for non-commercial purposes or training of dogs, or to give warning of any hazardous condition or use of or structure or activity on such premises to persons entering for such purposes” (General Obligations Law § 9-103 [1] [a]; emphasis added).
The statute further provides that an owner of premises who permits any of the above activities does not thereby: "(1) extend any assurance that the premises are safe for such purpose, or (2) constitute the person to whom permission is granted an invitee to whom a duty of care is owed, or (3) *450 assume responsibility for or incur liability for any injury to person or property caused by any act of persons to whom the permission is granted.”
The statute’s effect in limiting liability is not total. As noted, it does not absolve the owner for a "willful or malicious” act or omission (General Obligations Law § 9-103 [2] [a]). Nor does it apply in a "case where permission to pursue any of the activities enumerated in this section was granted for a consideration”. (General Obligations Law § 9-103 [2] [b].) Because neither of these exemptions is relevant, we are concerned with a clear-cut issue of statutory construction: whether General Obligations Law § 9-103 applies to a claim based on a breach of duty by a municipality in the operation of a supervised park like the one here.
Before addressing the statute’s applicability, we consider plaintiff’s contention that defendant should be precluded from relying on General Obligations Law § 9-103 because it failed to plead it as an affirmative defense or to move for dismissal or summary judgment prior to trial. General Obligations Law § 9-103 is not an affirmative defense that must be pleaded (CPLR 3018 [b]; see, 3 Weinstein-Korn-Miller, NY Civ Prac If 3018.13). If the statute is applicable, its sole effect is to establish the substantive law defining the extent of the duty owed to plaintiff, and the facts, which arguably bring the case within the statute, are what plaintiff, himself, asserts — that he was injured at the entrance of the park while engaged in one of the included activities, bicycling. While it would have been better practice to raise the legal issue earlier by way of motion, defendant’s failure to do so did not, contrary to plaintiff’s contention, result in a waiver.[3] We turn then to a discussion of the statute.
II
General Obligations Law § 9-103, for claims within its reach, effectively immunizes the landowner from suit, except for a willful or malicious act or omission. As we stated in Sega v *451 State of New York (60 NY2d 183, 192), if the "statute applies, plaintiff must prove that the defendant willfully or maliciously failed to guard or to warn against a dangerous condition, use, structure, or activity. The defendant’s negligence, if any, is immaterial”.[4]
In construing General Obligations Law § 9-103, we must, of course, carefully examine the language of the statute and its underlying purpose to determine its intended effect. But we may also look beyond the words of the statute, to the history surrounding its original enactment as part of the former Conservation Law (L 1956, ch 842) and the several subsequent amendments to it (see, New York State Bankers Assn. v Albright, 38 NY2d 430, 434, 436, 437; McKinney’s Cons Laws of NY, Book 1, Statutes §§ 91, 92, 96, 111, 124, 141, 143, 146). We are mindful that in "the interpretation of statutes, the spirit and purpose of the act and the objects to be accomplished must be considered. The legislative intent is the great and controlling principle” (People v Ryan, 274 NY 149, 152; see, Matter of Petterson v Daystrom Corp., 17 NY2d 32, 38; emphasis added).
From its wording and an analysis of the statutory scheme, the sole purpose of General Obligations Law § 9-103 is evident — to induce property owners, who might otherwise be reluctant to do so for fear of liability, to permit persons to come on their property to pursue specified activities. General *452 Obligations Law § 9-103 offers two inducements to the property owner to give such permission: (1) the broad grant of immunity from liability conferred in subdivision (1) (a) (absolving the owner of the "duty to keep the premises safe for entry or use by others” and of the duty "to give warning of any hazardous condition”) and (2) the assurance provided in subdivision (1) (b) (that by giving permission to use his property the owner does not, by that act, assure "that the premises are safe” or "constitute the person to whom permission is granted an invitee to whom a duty of care is owed”). It would be contrary to reason to assume that the Legislature could have intended that the statute apply in circumstances where neither the basic purpose of the statute, nor, indeed, any purpose could be served — as in the case of the supervised park here where the municipality has already held its recreational facility open to the public and needs no encouragement to do so from the prospective immunity offered by the statute.
Moreover, subdivision (1) (b) — to have any meaning and effect — could not have been intended to apply here. Subdivision (1) (b) provides an additional incentive to the property owner by assuring him, among other things, that in giving permission for use of his property he does not "constitute the person to whom permission is granted an invitee to whom a duty of care is owed” (General Obligations Law § 9-103 [1] [b]; emphasis added). The Legislature can hardly have intended to grant this additional assurance afforded by subdivision (1) (b) where it would be superfluous and could serve no purpose, i.e., where the owner, like defendant here, has already encouraged public use and assumed the duty of reasonable care in the operation of its park (see, Preston v State of New York, 59 NY2d 997, 998; Caldwell v Village of Is. Park, 304 NY 268, 273; Leone v City of Utica, 66 AD2d 463, 466, affd 49 NY2d 811).
That the statute’s sole purpose was, and continues to be, to encourage landowners to allow their properties to be used by the public for a limited number of outdoor recreational activities is confirmed by an analysis of the history surrounding its enactment and subsequent amendments. When first adopted, the statute was entitled "No duty to keep premises safe for hunters, trappers or fishermen or for acts of such persons” and encompassed only the activities of hunting, trapping, fishing and the training of dogs (Conservation Law § 370, as added by L 1956, ch 842). The Bill Jacket refers to "the anxiety of owners, lessees and occupants of premises suitable *453 for hunting, fishing and trapping that unless they exclude sportsmen, they may be held liable for injuries suffered by such person” (Bill Jacket, L 1956, ch 842, at 18, Mem of Law Rev Commn). After the statute was recodified as General Obligations Law § 9-103 (L 1963, ch 576), subsequent amendments expanded its scope to include new activities such as hiking, horseback riding, snowmobiling and hang gliding. The memorandum accompanying the amendment to include cross-country skiing (L 1978, ch 187) states: “Amending section 9-103 of the general obligations law will open up vast areas of private Adirondack land for ski touring. This proposal protects the private landowner[s] by greatly limiting their liability, and encourages these property owners to open their lands to the general public for recreational use” (1978 NY Legis Ann, at 150). With respect to the amendment concerning cutting and gathering firewood (L 1979, ch 336), the legislative memorandum reads: “Owners of wood lots * * * may be reluctant to permit their neighbors to cut and gather firewood because of the possibility of lawsuits. Were liability limited, there would be greater opportunities to use this form of energy for home heating” (1979 NY Legis Ann, at 207).
From its context in the Conservation Law when first enacted[5] and the nature of the activities then covered, we can reasonably conclude that the statute was originally envisioned as applying to undeveloped or wilderness areas of the type that would ordinarily be frequented by sportsmen engaged in the four listed activities — hunting, trapping, fishing and training of dogs (Conservation Law § 370, as added by L 1956, ch 842). Whether the type of property contemplated by the statute has been broadened by the various amendments adding other activities less suggestive of wilderness areas we need not now decide, for the statute remains unchanged in one significant respect: it does not provide immunity to a municipality, which, irrespective of any inducement contained in General Obligations Law § 9-103, already operates and maintains a supervised facility, such as defendant’s, for use by the public. Nothing in the wording of General Obligations Law § 9-103 or its history supports defendant’s construction which results in a drastic reduction in a municipality’s responsibility in the operation and maintenance of its supervised parks, and *454 serves no discernible public interest, certainly not one consistent with the stated aim of section 9-103: encouraging a landowner to permit persons to come upon his property for the purpose of hunting, fishing and other outdoor recreational activities (see, Russo v City of New York, 116 AD2d 240, 244, 245; Bush v Village of Saugerties, 114 AD2d 176, 178-180; O’Keefe v State of New York, 104 AD2d 43).
We note, moreover, that when General Obligations Law § 9-103 is applied, for example, to a person hunting or fishing in open or wilderness areas pursuant to the owner’s permission granted under the statute, there is a quid pro quo — permission to hunt or fish in return for the statutory immunity from liability. But for the inducement to the owner of the liability protection, the person presumably would not have been permitted on the property. This is clearly not the case when someone is injured in a city park like the one here where the public is already encouraged to engage in recreational activities of all kinds. Then, the city has already undertaken the higher duty that the law imposes on municipalities in the operation and maintenance of supervised park facilities (see, Preston v State of New York, 59 NY2d 997, supra; Scurti v City of New York, 40 NY2d 433, 437; Caldwell v Village of Is. Park, 304 NY 268, 274, supra). If the statute is applied in such case, the result is an immediate reduction of this higher duty to one which requires the municipality to do no more than refrain from a malicious act or omission. The municipality would give up nothing but gain immunity. And this immunity would depend solely on a factor which bears no relationship to the risk of harm or the municipality’s ability to prevent it, i.e., whether the activity for which the person entered the premises happened to be one of those mentioned in the statute. Whether plaintiff was in the park for bicycling or roller skating, the duty of care owed by the city should be the same, for it would be an absurdity to suggest that the Legislature intended that the claim of a person using a supervised city park should be barred in one case but not the other. The broad reading of the statute urged by defendant which produces such an unreasonable result should be avoided (Matter of Petterson v Daystrom Corp., 17 NY2d 32, 38, supra; People v Ryan, 274 NY 149, 152, supra; McKinney’s Cons Laws of NY, Book 1, Statutes §§ 141, 143, 146).
Our consideration of the legislative history of General Obligations Law § 9-103 is not contrary to our decision in Sega. There, we noted that the question whether General Obliga *455 tians Law § 9-103 may be read to include State-owned lands did not require an examination of legislative history, because the wording of the statute on the point was unambiguous and the meaning plain (Sega v State of New York, supra, at pp 190-191). That fact does not preclude our examination of legislative history to decide the answer to quite a different question, one not clearly answered by the words of the statute: whether General Obligations Law § 9-103 applies to afford immunity to a municipality in the maintenance of a supervised public park and recreational facility such as the one here (see, New York State Bankers Assn. v Albright, 38 NY2d 430, 434, 436, 437, supra).
We have considered defendant’s other arguments and find them to be without merit. Accordingly, the order of the Appellate Division should be affirmed, with costs.
Chief Judge Wachtler and Judges Meyer, Simons, Kaye, Alexander and Titone concur.
Order affirmed, with costs.

. There are two plaintiffs, Dean Ferres, who was injured, and his wife, Susan Ferres, who has a derivative cause of action. Both are respondents here. In using the word "plaintiff,” hereafter, we refer only to Dean Ferres.

. The statute in subdivisions (1) (a) and (1) (b) includes an "owner, lessee or occupant of premises”. Because defendant is the owner of the premises, we refer hereafter to the statute as though it applied only to an "owner”.

. Although the precise issue was not before us in Sega v State of New York (60 NY2d 183), we inferentially held that section 9-103 is not waived by failing to plead it or to raise it by motion (id., at p 190, n 2). In Sega, defendant referred to section 9-103 for the first time in the Appellate Division as a basis for urging affirmance of Court of Claims finding of no liability. We held that defendant was not precluded from relying on section 9-103 by its failure to raise it earlier.

. In Sega we held that the intended effect of the statute, when originally enacted in 1956 as part of the former Conservation Law (L 1956, ch 842), was to limit the extent of the duty of a landowner to a person using his land for a permitted activity to that owed a trespasser under then existing rules, since abolished (Basso v Miller, 40 NY2d 233), i.e., merely to refrain from "a willful or malicious failure to warn” (Sega v New York, 60 NY2d, at p 191). We specifically rejected the argument, in Sega, that the Legislature intended to fix this statutory duty at the higher pre-Basso standard then owed to a licensee, stating at p 191): "Indeed, the statute is contrary to the common law existing in New York in 1956. At that time, the occupier of premises was not liable to a licensee unless the occupier knew of the dangerous condition, realized that it involved an unreasonable risk, believed that the guest would not discover the condition or comprehend the risk, and then failed to exercise reasonable care in warning of the condition or risk (see Higgins v Mason, 255 NY 104, 109-110). In contrast, section 9-103 and its predecessors impose liability only if there is a willful or malicious failure to warn”. (Emphasis added.) In Sega, the references to these now abolished distinctions were solely for the purpose of depicting the legal context in which the statute was written and passed. We by no means suggested in Sega and do not suggest now that these abolished distinctions have been resurrected either in the common law or in General Obligations Law § 9-103.

. The statute, it should be noted, still contains a reference to the former Conservation Law (see, General Obligations Law § 9-103 [1] [a], [c]) by providing that it applies to premises "whether or not posted as provided in section 11-2111 of the environmental conservation law”.