Chief Judge Wachtler
(concurring). I agree that the protection of General Obligations Law § 9-103 is available to defendant and that, accordingly, the complaint should be dismissed. As the plurality notes, "there is nothing in the statute indicating that commercially used property should be treated differently from other property.” (Plurality opn, at 45.)
I cannot join the plurality, however, because of the suggestion, implicit in its analysis, that the statute would not apply to land the court determines to be somehow inappropriate for the listed recreational purposes. Whether the statute applies to a particular piece of property, according to the plurality, depends on whether it is "a type of property which is not only physically conducive to the particular activity or sport but is also a type which would be appropriate for public use in pursuing the activity as recreation” (plurality opn, at 45).
Apparently, then, if a recreationist enters land to engage in one of the listed activities and it turns out that the land is not appropriate for that use, the statute will not apply and the landowner will be liable if the recreationist is injured. This, despite the language of the statute, which declares that "an owner, lessee or occupant of premises * * * owes no duty to keep the premises safe for entry or use by others for [the listed activities] or to give warning of any hazardous condition or use of or structure or activity on such premises to persons entering for such purposes” (General Obligations Law § 9-103 [1] [a]).
Plainly, the statute contains no exception for properties which are inappropriate for the listed activities. By creating such an exception, the plurality sends this message to landowners: there is only a duty to keep your land safe for these activities if it is inappropriate for such use. That message is not only puzzling, but given the purpose of the immunity granted by the statute, it seems to me to be ill-advised.
We all agree that the purpose of General Obligations Law *49 § 9-103 was "to induce property owners, who might otherwise be reluctant to do so for fear of liability, to permit persons to come on their property to pursue specified activities” (Ferres v City of New Rochelle, 68 NY2d 446, 451). Prior to the enactment of the statute, landowners were, quite understandably, reluctant to allow their property to be used by fishermen, hunters or other recreationists because they could be held accountable for money damages if the land contained some dangerous condition which caused an injury to one of the recreational users. Except for the provisions of General Obligations Law § 9-103, this fear is even more well founded today, after the demise of the tripartite distinctions governing landowner liability and the application of a single standard of reasonable care under the circumstances (see, Basso v Miller, 40 NY2d 233).
Section 9-103 was designed to allay those fears; by granting immunity to landowners from suits by recreational users of their property, it relieved them of the burden of determining whether their property is safe for the designated activities. In effect, the statute permits a landowner, if he or she so chooses, to ignore with impunity those who enter the land for such purposes. That sense of repose was the inducement offered by the Legislature to encourage open lands. The interpretation of the statute suggested by the plurality, however, would impose the new, but not far different burden of determining whether property is "physically conducive to the particular activity or sport” and "appropriate for public use in pursuing the activity”.
It is not clear what physical attributes of the property will render it inappropriate for a given use. I assume that it must be something other than a dangerous condition or else the statute will never be applicable in the very situation it was designed to address — where an injury is caused by a dangerous condition on the land.
It will certainly prove difficult, even for Judges and lawyers, to draw the line between land covered by the statute despite the presence of dangerous conditions and land which falls outside the statute because it is "inappropriate” for the particular recreational activity. That point is illustrated well enough by the disagreement between the plurality and the dissenters in the present case. It will be even more difficult for landowners to assess their properties against this uncertain standard. Unfortunately, uncertainty in the minds of land *50 owners can only thwart the purpose of the statute because, in the face of doubt as to the status of their property, prudent landowners will surely protect themselves by refusing access to their lands.
Even if landowners are able to overcome this obstacle and determine which activities their land is appropriate for, still they cannot safely ignore the recreational users. Indeed, unless the property is appropriate for all of the listed activities (from hang gliding to spelunking), the plurality’s standard would seem to require the landowner to patrol the boundaries and allow entrance only to those who intend to pursue the particular activities for which the premises are suited. The other alternatives would be either to risk liability or, what is more likely, to close the property to all. This cannot be what the Legislature intended.
Certainly, the best evidence of the Legislature’s intent, the plain language of the statute, provides no support for the exception advocated by the plurality. If we are to assume, as we must, that the words of the statute were carefully chosen, then that broad language, from which exceptions and qualifying language are conspicuously absent, suggests that the Legislature consciously eschewed such limitations in order to provide clear guidance to landowners.
The plurality misses this point when it asserts that "there could be no public interest in inducing the owners of * * * unsuitable properties to make them available for public recreation” and that "offering immunity * * * to such owners would be pointless and would not further the underlying statutory purpose” (plurality opn, at 46). Granting immunity to owners of unsuitable properties is not "pointless,” because it is not granted to induce them to make their properties available to the public but rather to avoid uncertainty and thereby induce the owners of suitable properties to open their lands. Immunity that is contingent upon a court or jury determining that one’s property is "appropriate” will not be enough security for many landowners, or so the Legislature may have thought.
Thus, the public interest and the statutory purpose can be served by a bright-line test, especially when the test is intended to be construed by laypersons. The Legislature was free to choose that option as the best way to achieve the desired result. The broad language of the statute suggests that such a choice was made. The courts have no authority to substitute their own choice.
*51 In my view, the balance struck by the statute is clear: landowners allow access to their lands; recreational users who take advantage of this access give up the right to sue. From this perspective, it seems to me, the burden of determining whether land is "appropriate” for or "conducive” to the activity should be placed on the recreational user. One who takes advantage of the statute by enjoying access to the lands of another for one of the enumerated activities should not be heard to complain that the land was inappropriate for the purpose.
I would simply hold, therefore, that the statute is applicable because plaintiff was engaged in one of the listed activities at the time of his injury and because there is no basis in the statute for treating commercially used property differently from other property.
The plurality’s response to my position assumes, incorrectly, that I would leave no room for consideration of factors other than the type of activity the plaintiff was engaged in at the time of the injury. My point is simply that the factor emphasized by the plurality — the suitability of the land for that particular activity — is inappropriate. The activity is, of course, a crucial factor, because the statute is very specific about the activities which give rise to protection for the landowner. But beyond that, the most important factor and the one most consistent with our precedents, is the one we found to be controlling in Ferres v City of New Rochelle (68 NY2d 446, supra). There, we held that a municipal park was not covered by the statute because the park existed for the very purpose of providing recreational opportunities for the public. Public access did not depend on the incentive offered by the statute and the trade-off envisioned by the statute was, therefore, lacking (see, id., at 454).*
I would abide by that sound reasoning and, although I do not think it is wise to hypothesize about cases not before us, the principle of Ferres might be equally applicable to the reductio ad absurdum examples offered by the plurality. For example, it is at least arguable that, in the case of the *52 neighbor’s child bicycling in a small urban backyard (plurality opn, at 46), the statutory quid pro quo is also absent, either because allowing the child in the yard is not equivalent to granting public access or because it is unlikely that access was granted in response to the incentive offered by the statute. These arguments are at least as tenable as the plurality’s approach, which would require a holding that small urban backyards are unsuitable, as a matter of law, for bicycling by neighborhood children.
I suppose that someone may decide to engage in one of the listed activities on land that is clearly inappropriate for the purpose. A bicyclist may try to negotiate a cliff-side path or a hang-gliding enthusiast may try to land in the woods. I cannot understand, however, why we should contort the recreational use statute to ensure that it does not provide immunity to the landowner in such a case, when traditional tort doctrines of foreseeability and comparative negligence would severely limit or foreclose liability anyway.
The list of activities contained in the statute and the principle recognized in Ferres (supra) provide a sound basis for limiting the reach of the statute. I am open to any other exception that is consistent with the statutory language and purpose. Where the statute applies, however, there can be no doubt that it was intended to abrogate the "fundamental rule of [property] owner liability” concerning the landowner’s duty of care (see, plurality opn, at 46). That is what the statute is all about.

 Despite the plurality’s reliance on Ferres v City of New Rochelle (68 NY2d 446), the holding in that case provides no support for an interpretation of the statute which would have it apply only if the property is appropriate for the recreational activity that the injured person was pursuing. Under such a test, the statute would have applied in Ferres because the municipal park was perfectly appropriate for the activity involved in that case — bicycling.