808 P.2d 680 (1991)
NORTHEAST OKLAHOMA ELECTRIC COOPERATIVE, INC., an Oklahoma corporation, Appellant,
v.
STATE of Oklahoma ex rel. CORPORATION COMMISSION, and ex rel. Robert H. Henry, Attorney General of the State of Oklahoma; Public Service Company of Oklahoma, Appellees.
No. 74453.
Supreme Court of Oklahoma.
March 19, 1991.
J. Duke Logan, Donald K. Switzer, Messrs. Logan, Lowry, Johnston, Switzer, West & McGeady, Vinita, for appellant.
Jay M. Galt, Robert V. Varnum, Jack P. Fite, White, Coffey, Galt & Fite, P.C., Oklahoma City, for appellee, Public Service Co. of Okl.
Lindil C. Fowler, Leslie Wilson Pepper, Maribeth D. Snapp, Oklahoma City, for appellee, Okl. Corp. Com'n.
*681 OPALA, Chief Justice.
The dispositive issue is whether the mootness doctrine bars review of the Corporation Commission's order which approves the terms of a proposed contract intended by the applicant (PSO) for entry with a state agency, when the actual bidding procedure later ended with the rejection of the Commission-approved contract and the acceptance of a third party's bid and where the appellant had previously been declared legally ineligible to compete for the contract's award. We answer in the affirmative.
The Board of Mental Health and Substance Abuse Services (Board) solicited bids for the construction of a new electrical distribution system and for electric service to be provided at Eastern State Hospital, Vinita, Oklahoma (Hospital). Both the appellant, Northeast Oklahoma Electric Cooperative, Inc. (Northeast), and appellee, Public Service Company of Oklahoma (PSO), desired to submit proposals. Because PSO and Northeast appeared to have a unique legal impediment to qualifying for the contract's award, neither of them believed it could lawfully provide service to meet the Board's specifications without a prior favorable ruling from the Corporation Commission.
PSO instituted two separate proceedings; Northeast participated in both. In the first, PSO sought a declaration prohibiting Northeast from offering to supply electric power to the Hospital. In the second proceeding, PSO asked for an order excepting it from operation of a Commission rule governing public utilities. Although the instant appeal seeks corrective relief from only the latter proceeding's resolution, a discussion of both quests for relief is necessary for a more comprehensive understanding of the mootness doctrine's application to the case before us.
For Northeast, the obstacle to providing electric service at the hospital was the Retail Electric Supplier Certified Territory Act, 17 O.S.1981 § 158.21 et seq. Absent an applicable statutory exception, a retail electric provider is prohibited from supplying electricity in the "certified territory of another."[1] Eastern State Hospital is located in PSO's certified territory. One exception to this rule, found in § 158.25(E), permits any retail electric supplier to provide service across territorial boundaries "if the connected load for initial full operation of... [the] electric-consuming facility is to be 1,000 kw or larger." In order to disqualify Northeast from the bidding process, *682 PSO had to show that the facility's "connecting load" does not meet or exceed the statutory minimum.
The Hospital is actually comprised of thirty-three buildings and some other electricity-consuming facilities. Rule 11(D) of the General Rules and Regulations Governing the Operation of Electric Utilities requires, among other things, that "each point of delivery" be viewed "as a separate consumer."[2] Northeast urged the Commission to view Hospital's load as the sum of each of the thirty-three points of delivery[3] for the purpose of meeting the 1,000 kw exception level. The Commission refused to accept this approach, finding that each building constituted a separate point of delivery and "no single building ... has a connected load of 1000 kw or larger." PSO was declared the sole retail electric supplier eligible for servicing Eastern State Hospital. The results of this earlier proceeding are now final and beyond the reach of appellate review, since Northeast failed to appeal from this ruling by the Commission.[4]
In PSO's second quest for relief before the Corporation Commission, it asked for a "waiver" of Rule 11(D),[5] which requires, among other things, separate meters for each point of delivery and, in effect, prohibits use of a single meter for billing purposes. Because Eastern State Hospital demands for its needs a single-meter billing system, PSO argued that the rule was "unduly burdensome." The Commission agreed and excepted PSO from the rule's prohibition, enabling PSO to bid on the hospital project which is located in its own certified territory. It is from this latter decision of the Commission that Northeast perfected the appeal now before us.
Northeast complains that (1) either inadequate notice or no notice had been given of PSO's quest for relief from the effects of Rule 11(D), (2) the Commission failed to conduct a "full and fair hearing" and (3) the decision excepting PSO from the rule's *683 operation and approving the proposed rates is legally unsound and "discriminatory." Because of events subsequent to this appeal's commencement,[6] the issues tendered by Northeast are now moot and hence may not be addressed.[7]
PSO and the Commission had earlier moved for this appeal's dismissal based on mootness. We denied the motion "without prejudice to renewal in the briefs." Both appellees now reassert their position. According to an affidavit tendered by PSO, the Board has awarded the contract earlier in contest between PSO and Northeast to Grand River Dam Authority (GRDA).[8] Later, also during the pendency of this appeal, we were notified that a "final contract" had been executed between GRDA and the Board.
Northeast maintains that its appeal is still viable because of certain contingencies which, if they were to occur, could bring to realization whatever threat the Commission's ruling to be reviewed might have posed earlier. According to the sole affidavit tendered by Northeast before we received notice of the GRDA contract's execution, the then-unexecuted (or proposed) agreement contained a provision allowing the Board to cancel electric service if, after five years in operation, the rates are increased. Northeast also emphasizes that, based on the affidavit, the contract might include a provision allowing it to be substituted for GRDA "if litigation between [PSO and Northeast] ... is concluded so as to allow Northeast to legally furnish retail electric service to Eastern State Hospital."[9] Finally, Northeast urges us to consider the possibility that PSO will seek an injunction against it, depending on whether Northeast participates in the project.
We are unpersuaded by any of these contingencies. The bidding process has been completed. PSO's loss of the contract to GRDA is now a final act. No real relief is affordable to Northeast in this appeal. Inasmuch as the Corporation Commission order here on review affects only PSO's pre-bidding status, the question of that decision's validity became moot upon the award and execution of the GRDA/Board contract.
Circumstances which might arise after the contract's award and execution, particularly when both PSO and Northeast have been eliminated from the bidding contest, do not impel us to invoke either of the two recognized exceptions to the mootness doctrinepublic interest[10] or likelihood-of-recurrence.[11] While public interest generally may be ascribed to the Commission's order favoring PSO, there is no public-law issue presented here which calls for urgent resolution. Neither does it appear that the Commission is likely to repeat its action. This is not a case in which the appellant is complaining that its bid was wrongly denied. Northeast lost its opportunity to compete with PSO as an eligible bidder in an earlier and unappealed decision by the Commission. In any event, since *684 this court came to be notified of the GRDA/Board contract, Northeast has not presented, by counter-affidavit or otherwise, any facts showing that PSO has any chance of gaining the contract's award.
In sum, the Corporation Commission's action in authorizing PSO to submit its proposal does not appear "capable of repetition, yet evading review."[12]
APPEAL DISMISSED.
HODGES, V.C.J., and LAVENDER, SIMMS, HARGRAVE and SUMMERS, JJ., concur.
ALMA WILSON, J., concurs specially by opinion.
KAUGER, J., concurs in result.
ALMA WILSON, Justice, concurring specially:
I concur specially to express my view that dismissal of this appeal under the doctrine of mootness does not render the primary issue herein finally adjudicated as between the parties herein.
The method of calculating the kilowatt level of consumption of electricity by Eastern State Hospital was the primary issue determined in both proceedings before the Oklahoma Corporation Commission, initiated by Public Service Company of Oklahoma (PSO) and contested by Northeast Electric Cooperative, Inc. (Northeast). In these proceedings, PSO presented contradictory positions and the Commission entered contradictory findings on this common issue. I do not point out the contradiction in disapproval of the Commission. The Commission has continuing jurisdiction to alter and amend its findings and orders as may be just and reasonable. Okla. const., art. 9, § 18.
In the briefs submitted, this Court is advised of negotiations for a contract between Northeast and the Grand River Dam Authority for construction (see note 9 of the Opinion) and potential future electric service. The method of calculating the kilowatt level of consumption by the hospital may be contested by these same two suppliers in future Commission proceedings. Although the Commission has no power to dictate contractual provisions between companies or entities, it is empowered to determine the effect of those contracts on the public and approve, modify or reject the same. Lone Star Gas Co. v. Corporation Commission, 170 Okl. 292, 39 P.2d 547 (1934). Thus, neither Order No. 329199 nor Order No. 343031, determining the method of calculating electricity consumption of the hospital, bars resubmission of the issue to the Commission in the future.
NOTES
[1] 17 O.S.1981 § 158.24(A).
[2] The full text of Rule 11(D), General Rules and Regulations Governing the Operations of Electric Utilities, provides as follows:

"In serving a consumer, regardless of classification, the utility shall regard each point of delivery as a separate consumer, or contract, and shall separately meter and charge accordingly, and shall not combine meter readings, for the purpose of giving the consumer a lower rate, unless the approved tariffs of the company provide otherwise. More than one point of delivery to a single consumer at one premise or location will be permitted when the physical or electrical characteristics of the facilities serviced require more than one point of delivery according to good engineering and operating practices, in which case total usage at multiple points of delivery shall be combined for billing purposes." (Emphasis added.)
[3] The "point of delivery of electrical service" is defined by Rule 8(A), General Rules and Regulations Governing the Operation of Electric Utilities, as "the point at which the electrical supply system of the utility connects to the wiring system of the consumer."
[4] Art. 9 § 20, Okl. Const., infra; 12 O.S.1981 § 953, infra. Failure to perfect an appeal from a reviewable decision of the Corporation Commission renders the agency's order final. Public Serv. Co. of Okl. v. Okl. Corp. Com'n, Okl., 688 P.2d 1274, 1276 (1984); Crews v. Shell Oil Company, Okl., 406 P.2d 482, 486 (1965).

The pertinent terms of Art. 9 § 20, Okl. Const., provide:
"From any action of the Corporation Commission prescribing rates, charges, services, practices, rules or regulations of any public utility or public service corporation ..., an appeal may be taken by any party affected . . . directly to the Supreme Court of the State of Oklahoma. . . in the same manner and in the same time in which appeals may be taken to the Supreme Court from the District Courts, except that such an appeal shall be of right, and the Supreme Court may provide by rule for proceedings in the matter of appeals in any particular in which the existing rules of law are inapplicable. * * *
"An appeal from an order of the Corporation Commission affecting the rates, charges, services, practices, rules or regulations of public utilities, or public service corporations, shall be to the Supreme Court only.... "* * *" (Emphasis added.)
The terms of 12 O.S.1981 § 953 define a final order:
"An order affecting a substantial right in an action, when such order, in effect, determines the action and prevents a judgment, and an order affecting a substantial right, made in a special proceeding or upon a summary application in an action after judgment, is a final order, which may be vacated, modified or reversed, as provided in this article." (Emphasis added.)
[5] See supra note 2.
[6] This court may take cognizance of facts arising during the pendency of an appeal if they have a direct impact on the issues tendered for review. City of Tulsa v. Chamblee, 188 Okl. 94, 106 P.2d 796 (1940) (the court's syllabus ¶ 1); Lawrence v. Cleveland County Home Loan Auth., Okl., 626 P.2d 314, 315 (1981).
[7] This court will not address abstract or hypothetical questions. Westinghouse Elec. v. Grand River Dam Auth., Okl., 720 P.2d 713, 718 (1986).
[8] The Retail Electric Supplier Certified Territory Act does not apply to Grand River Dam Authority (GRDA). 17 O.S.1981 § 158.30. PSO's certified territory hence posed no obstacle to GRDA's bidding on the project.
[9] According to the record, Northeast had an admitted interest in the GRDA/Eastern State Hospital contract. Northeast informed the Corporation Commission that it had expected to enter into an agreement with GRDA which would allow Northeast to build and maintain, but not supply power to, the Hospital's electricity-consuming facilities.
[10] Westinghouse Elec. v. Grand River Dam Auth., supra note 7 at 720; Lawrence v. Cleveland County Home Loan Auth., supra note 6 at 315-316; Peppers Refining Co. v. Corporation Commission, 198 Okl. 451, 179 P.2d 899, 901 (1947); Payne v. Jones, 193 Okl. 609, 146 P.2d 113, 116 (1944).
[11] In re D.B.W., Okl., 616 P.2d 1149, 1151 (1980): Lawrence v. Cleveland County Home Loan Auth., supra note 6 at 315-316.
[12] In re D.B.W., supra note 11 at 1151. See also Tulsa Tribune v. Oklahoma Tax Com'n, Okl., 768 P.2d 891, 897 (1989) (Opala, V.C.J., dissenting).