OPINION OF THE COURT
C. Raymond Radigan, J.
This proceeding was brought to require the successor custodian of an account established under the Uniform Gift to Minors Act (UGMA) to render her account as custodian pursuant to EPTL 7-4.8. The accounting party is the minor’s mother. A hearing was conducted on February 13, 1992 and is scheduled to be completed on May 21, 1992.
*263 At the hearing in February, the respondent’s counsel moved to quash a subpoena duces tecum which sought copies of bank records and the respondent’s income tax returns. The bank records relating to all accounts into which the UGMA funds were deposited are clearly relevant and should be produced prior to the continuation of the hearing (EPTL 7-4.4 [h]).
EPTL 7-4.4 (b) provides that "[t]he custodian shall * * * expend for the minor’s benefit, so much of or all the custodial property as the custodian deems advisable for the support, maintenance, education and benefit of the minor * * * to the extent that the custodian in his discretion deems suitable * * * with or without regard to the duty of himself or of any other person to support the minor or his ability to do so”.
The respondent interprets this language to authorize her as custodian, to use the child’s funds to fulfill her individual support obligation regardless of her own finances or ability to so provide. She contends, therefore, that any information which might be gleaned from her income tax returns regarding her financial position is irrelevant. The court disagrees.
In construing statutes, the legislative intent is the controlling principle (People v Ryan, 274 NY 149; Ferres v City of New Rochelle, 68 NY2d 446). The predecessor to EPTL 7-4.4 was article 8-A of the Personal Property Law. Effective March 2, 1956, it was entitled the Gifts of Securities to Minors Act and related only to gifts of securities. While the legislative intent is not expressed in the statute itself, the memorandum submitted to the Legislature in support of the bill indicates that the bill would be beneficial because it would permit third parties to deal with the custodian without inquiring as to whether he is acting within his authority. The memorandum also indicates the intent is to "facilitate” gifts of securities to minors by transferring them to a custodian appointed for the minor (1956 McKinney’s Session Laws of NY, at 1808). That the intent of the act was one of facilitation of transfer of securities and the exculpation of liability of third parties is buttressed by the fact that the memorandum in support of the bill was prepared and submitted not by any committee of the Senate or Assembly, but rather by the State Banking Department (presumably on behalf of the banks who often serve as transfer agents for traded securities).
The 1956 act was repealed with the passage of the New York Uniform Gifts to Minors Act originally added as new article 8-A of the Personal Property Law and now contained *264 in ETPL 7-4.1 et seq. It became effective July 1, 1959. Unfortunately no legislative memorandum in support of the bill is available. However, the Governor’s memorandum approving the adoption of the Uniform Gifts to Minors Act states that
"[t]he Uniform Act is a definite improvement over the 1956 law which, however, did much to facilitate gifts of securities to minors. Among other things, the Uniform Act permits gifts of money as well as securities to minors and permits trust companies to serve as custodians.
"This bill will provide flexibility in the handling of property given to minors and should result in encouraging gifts to minors” (1959 McKinney’s Session Laws of NY, at 1739).
Perhaps the most succinct statement of the intent of the statute is this one: "[t]he Gifts to Minors Acts were introduced to create a simple, inexpensive method of permitting minors to own securities in a manner that would protect the minor and third parties dealing with property owned by the minor and would at the same time permit the donor the advantage of the gift tax exclusion” (Newman, The Uniform. Gifts to Minors Act in New York and Other Jurisdictions — Tax Consequences, Possible Abuses, and Recommendations, 49 Cornell LQ 12, 32).
Clearly then, the intent of the statute was to foster gifts to minors and provide safeguards to the minor and third parties dealing with the custodian with incidental tax relief to the donor; the court finds no intention expressed or implied which would make the child’s funds available to a parent in fulfillment of her own obligation to support the child.
Also, there is a rule of statutory construction that "A change in long established rules of law is not deemed to have been intended by the Legislature in the absence of a clear manifestation of such intention” (McKinney’s Cons Laws of NY, Book 1, Statutes § 153, at 331).
In New York it is "a matter of fundamental policy * * * that a [parent is responsible for the support] of a [minor] child” (Matter of Roe v Doe, 29 NY2d 188, 192-193; Family Ct Act § 413, former § 414). It is also the law of this State that the obligation of a parent, who has the ability to do so, to support a child exists even though the child may have an estate of its own (Matter of Kummer, 93 AD2d 135; Matter of Quat v Freed, 24 NY2d 645; Drazin v Drazin, 31 AD2d 531; Siegel v Hodges, 15 AD2d 571). So fundamental an obligation as the support of one’s own children could not be abrogated *265 without a clear statement of intent by the Legislature; none exists.
It is accordingly the opinion of this court that the language contained in EPTL 7-4.4 (b) was intended merely to facilitate the transfer of a child’s assets by a custodian and in no way affects the parental obligation of support of that child. The act in question being a uniform act adopted by many of our sister States, the interpretation of the identical language in our own act by the courts of other jurisdictions should be afforded substantial consideration.
An appellate court in Colorado, under similar facts and trying to harmonize the language in the UGMA with Colorado’s statutory requirement of parental support held: "Reading the two sections together, we conclude that the intent of the Uniform Gifts to Minors Act is to allow custodians to disburse funds whether or not the children are adequately supported. The section does nothing to relieve a parent of the separate duty to support the children, nor does it authorize the custodian to disburse funds as a means of fulfilling the parent’s obligation of support. This interpretation is unavoidable in light of the fact that the gift is irrevocable and gives to the children 'an indefensibly vested legal title’ to the gift” (In re Marriage of Wolfert, 42 Colo App 433, 435-436, 598 P2d 524, 526).
Accordingly, respondent’s motion to quash the subpoena duces tecum is denied. The respondent will be required to produce all income tax returns for the period she acted as custodian for review by the court in camera prior to any release to the petitioners by May 15, 1992.