Richard A. HUGHEY, Administrator of the Estate of Rachel Ann Hughey, Plaintiff–Appellant,

v.

The GRAND RIVER DAM AUTHORITY, a public Oklahoma corporation, Defendant–Appellee.

Carl Mack GLIDEWELL, Administrator of the Estate of Larry Mack Glidewell, Plaintiff–Appellant,

v.

The GRAND RIVER DAM AUTHORITY, a public Oklahoma corporation, Defendant–Appellee.

Nos. 78183, 79649.

Supreme Court of Oklahoma.

May 30, 1995.

As Corrected June 1, 1995.

Daniel B. Gossett and Cheryl Bisbee, Stipe, Gossett, Stipe, Harper, Estes, McCune & Parks, Tulsa, for plaintiffs-appellants.

John F. McCormick, Jr., William A. Caldwell, Pray, Walker, Jackman, Williamson & Marlar, Tulsa, and Waldo F. Bales and Allen Pease, Gen. Counsel, Grand River Dam Authority, Vinita, for defendant-appellee.

OPALA, Justice.

Certiorari was granted to resolve the first-impression public-law issue whether the Grand River Dam Authority—a public entity[1]—may claim the cloak of tort immunity from premises liability afforded by Oklahoma's Recreational Land Use Act? We answer in the *affirmative*.

## I

## ANATOMY OF LITIGATION

The personal representatives [plaintiffs] of the estates of Larry Mack Glidewell and Rachel Ann Hughey [decedents] brought separate[2] wrongful death actions against the Grand River Dam Authority [Authority] occasioned by an incident in which decedents drowned after their boat had struck at night an abandoned railroad bridge in the Horse-creek area of Grand Lake. They alleged the Authority (1) had knowledge of the bridge and (2) negligently failed to provide lights or warning signs in the vicinity of the hazard's location.

The Authority moved for summary judgment, arguing (1) the Recreational Land Use Act [RLUA][3] shields it from legal responsi-

---

1. The terms of 82 O.S.1991 § 861 provides in pertinent part:
 "There is hereby created within the State of Oklahoma a conservation and reclamation district to be known as 'Grand River Dam Authority', hereinafter called the district.... Such district shall be, and is hereby declared to be, *a governmental agency* of the State of Oklahoma, body politic and corporate. ٭ ٭ ٭ " (Emphasis supplied.)

2. The trial court consolidated the two cases. Hughey's action was then dismissed and later refiled.

3. The terms of 2 O.S.1991 § 1301–315 provides in pertinent part:
 "A. The purpose of [the RLUA] is to encourage persons to make available to the public land, water areas and park areas for outdoor recreational purposes by limiting their liability to persons going thereon....
 B. An owner or lessee who provides the public with a park area for outdoor recreational purposes *owes no duty of care* to keep that park area safe for entry or use by others, or to give warning to persons entering or going on that park area of any hazardous conditions, *structures* or activities thereon. An owner or lessee who provides the public with a park area for outdoor recreational purposes shall *not* by providing that park area:

 ٭ ٭ ٭ ٭ ٭ ٭

 2. Incur *any* duty of care toward a person who goes on the park area...." (Emphasis added.)

bility and (2) it is also protected by the terms of the Government Tort Claims Act [GTCA][4] whose provisions *exempt* it from civil liability.[5] In two identical orders—one in each case—the trial court ruled summarily for the Authority on *both* grounds.[6]

In separate opinions the Court of Appeals affirmed the nisi prius orders. Certiorari was sought to resolve the first-impression[7] issues whether (1) RLUA immunity extends to the Authority, (2) certain *exceptions* to that immunity may be applied[8] to these claims and (3) the Authority is protected by the terms of the GTCA. The two appeals stand consolidated for disposition by a single opinion. Because we answer the first question in the affirmative and the second in the negative we need not reach the last issue.

## II

## UNDER THE GTCA SCHEME OF IMMUNITY, GOVERNMENTAL TORT LIABILITY IS COEXTENSIVE WITH THAT OF PRIVATE TORTFEASORS

 Neither the RLUA nor the GTCA was enacted in a vacuum. The former—a statute governing premises liability in tort for harm to recreational users of property—must be construed together with the GTCA to effect that act's intent. The overarching principle embodied by the GTCA is that *private tort law is neither constricted nor enlarged by that act.* Rather, it is made applicable to governmental entities by the state's explicit waiver of sovereign immunity, unless otherwise statutorily specified.[9] The definitional provisions in the RLUA are sufficient-

---

4. 51 O.S.1991 §§ 151 *et seq.*

5. The Authority invoked the terms of 51 O.S.1991 § 155 which provide in pertinent part:

 "The state ... shall not be liable if a loss or claim results from:

 \* \* \* \* \* \*

 9. Entry upon any property where that entry is expressly or impliedly authorized by law;
 10. Natural conditions of property of the state ... [or]

 \* \* \* \* \* \*

 13. Inspection powers or functions, including failure to make an inspection, review or approval, or making an inadequate or negligent inspection, review or approval of any property, real or personal, to determine whether the property complies with or violates any law or contains a hazard to health or safety, or fails to conform to a recognized standard...."

6. The trial court ruled (1) decedents' claims are barred by the RLUA, (2) Authority's electrical generation conducted on the *locus delicti* is not "for profit" within the meaning of 2 O.S.1991 § 1301–315(C), *infra* note 8 and (3) the Authority is *exempt* from liability by the terms of the GTCA, 51 O.S.1991 § 155, *supra* note 5.

7. The *United States* may claim the immunizing benefits of Oklahoma's RLUA for purposes of avoiding liability under the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671–2680. *See Boyd v. U.S. Army, Corps of Engineers*, 881 F.2d 895, 899 (10th Cir.1989); *Cox v. U.S.*, 881 F.2d 893, 895 (10th Cir.1989). The question whether the RLUA applies to the State of Oklahoma or to its political subdivisions has never been settled. *Boyd v. U.S. ex rel. U.S. Army Corps*, Okl., 830 P.2d 577, 580 n. 3 (1992) *[Boyd II]*.

8. The terms of 2 O.S.1991 § 1301–315 *also* state in pertinent part:

 "C. This section shall *not* apply if there is any charge made or usually made by entering or using such park area, or any part thereof, or if any commercial or other activity for profit is conducted on such park area or any part thereof.

 \* \* \* \* \* \*

 E. [The RLUA] does *not* relieve any person of liability which would otherwise exist for want of ordinary care or for deliberate, willful or malicious injury to persons or property...."
 (Emphasis added.)

 Appellants urged at nisi prius that the Authority's generation of electricity in the Grand Lake area constitutes commercial activity within the meaning of § 1301–315(C), *supra.*

9. The GTCA was a legislative response to this court's abrogation of sovereign immunity in *Vanderpool v. State*, Okl., 672 P.2d 1153, 1156–1157 (1983). The act is both an adoption and conditional waiver of the sovereign immunity doctrine. The terms of 51 O.S.1991 § 152.1 provide in pertinent part:

 "A. The State of Oklahoma does hereby adopt the doctrine of sovereign immunity. The state ... whether performing governmental or proprietary functions *shall be immune from liability for torts.*
 B. The state, *only to the extent and in the manner provided in this act* waives its immunity...." (Emphasis added.)

 The terms of 51 O.S.1991 § 153(A) provide in pertinent part:

 "The state ... shall be liable for loss resulting from its torts ... *subject to the limitations and exceptions specified in this act and only where the state, ... if a private person or entity,* would be liable for money damages under the laws of this state...." (Emphasis added.)

ly inclusive so that the Authority could claim that act's immunity *aegis* either as a private person or as a governmental entity.[10] If the Authority is a governmental entity within the meaning of the GTCA, its immunity from tort liability to a recreational user of its waters is *derivative*, thus shielding it in the *same manner* as if the Authority were a private landowner. In light of the GTCA's mandate that government and private tort liability be *coequal* or coextensive, we hold today the Authority may claim the immunity afforded by the RLUA. Our pronouncement is in conformity with legislatively crafted rules of statutory construction [11] and with the *preferable approach* taken by those jurisdictions which have settled this issue.[12] Today's holding does not offend the purpose for which the RLUA [13] was enacted.

**10.** The terms of 2 O.S.1991 § 1301–102 provide in pertinent part:
"As used in [the RLUA]:
* * * * * *
4. The term 'person' means any individual, firm, partnership, corporation, organization or any combination thereof, whether or not incorporated."

**11.** The terms of 12 O.S.1991 § 2 provide in pertinent part:
"... [T]he rule of the common law, that statutes in derogation thereof, shall be strictly construed, shall not be applicable to any general statute of Oklahoma; but all such statutes shall be liberally construed to promote their object."
The terms of 25 O.S.1991 § 29 provide:
"The rule of the common law, that statutes in derogation thereof are to be strictly construed, has no application to the laws of this state, which are to be liberally construed with a view to effect their objects...."
*See Citizens' State Bank v. Strahan*, 63 Okl. 288, 165 P. 189, 191 (1917); *cf. Republic Bank & Trust v. Bohmar Minerals*, Okl., 661 P.2d 521, 523 (1983); *Riffe Petroleum Co. v. Great Nat. Corp., Inc.*, Okl., 614 P.2d 576, 579 (1980) (a *statute* creating a lien in derogation of the common law will be *strictly* confined to the ambit of the enactment giving it birth). The RLUA stands in derogation of the common law under which a landowner owes a duty of care to those entering the premises—the rigor of that duty depending upon the entrant's status as trespasser, licensee or invitee. *See, e.g., Taylor v. Hynson*, Okl., 856 P.2d 278, 281 (1993); *Brewer v. Independent School Dist. No. 1*, Okl., 848 P.2d 566, 570–571 (1993); *Lohrenz v. Lane*, Okl., 787 P.2d 1274, 1277 (1990); *Sutherland v. Saint Francis Hospital, Inc.*, Okl., 595 P.2d 780, 781 (1979).

**12.** *Anderson v. City of Springfield*, 406 Mass. 632, 549 N.E.2d 1127, 1128 (1990); *Fastow v. Bur-*

## III

## NO ACTIVITIES CONDUCTED BY THE AUTHORITY ON THE *LOCUS DELICTI* BRING IT WITHIN ANY EXCEPTION TO THE RLUA'S IMMUNITY GRANT

■ By its express terms the RLUA withholds immunity from premises liability where (1) entrance fees are charged to recreational users of the land/water areas or activities for profit are conducted within the area [14] or (2) the injury for which liability is sought to be imposed was deliberate, willful or malicious.[15] The record does not disclose that the Authority charges recreational users of its property an entrance fee. There is no record trail of the variety of commercial or for-profit activity in the Grand Lake area, which are contemplated by the RLUA's ex-

*leigh County Water Res. D.*, 415 N.W.2d 505, 508 (N.D.1987); *McCord v. Ohio Div. of Parks & Recreation*, 54 Ohio St.2d 72, 375 N.E.2d 50, 52 (1978) (these cases hold that governmental tort liability is governed by the same principles that apply to actions involving private parties and that governmental entities are put on the same footing as private tort defendants). *See also in this connection Poole v. City of Gadsden*, 541 So.2d 510, 513 (Ala.1989); *McGhee Through McGhee v. City of Glenns Ferry*, 111 Idaho 921, 729 P.2d 396, 397 (1986) (these cases immunize governmental entities under statutory schemes *different* from Oklahoma's RLUA). The reasoning expressed in jurisprudence—*Ferres v. City of New Rochelle*, 68 N.Y.2d 446, 510 N.Y.S.2d 57, 61–63, 502 N.E.2d 972, 977 (1986); *Delta Farms Rec. Dist. 2028 v. Super. Ct. Etc.*, 33 Cal.3d 699, 190 Cal.Rptr. 494, 499, 660 P.2d 1168, 1173 (1983)—that denies public entities the benefit of recreational land use statutes is fatally flawed for its failure to recognize the overarching principle of legislation modifying the doctrine of sovereign immunity.

**13.** The terms of 82 O.S.1991 § 875 provide in pertinent part:
"A. The [Authority] *shall not prevent free* public use of its lands and lakes for *recreational purposes....*
B. ... *[N]o charge shall ever be made to the public* for right to engage in ... *boating* ... in said lakes. * * *" (Emphasis added.)
The policy that guides the RLUA is to encourage opening of lands and waters to the public for recreational use. 2 O.S.1991 § 1301–315(A), *supra* note 3.

**14.** 2 O.S.1991 § 1301–315(C), *supra* note 8.

**15.** 2 O.S.1991 § 1301–315(E), *supra* note 8.

ception clause. The plain reading of the RLUA indicates that the type of commercial activity which takes a landowner out of the purview of immunity *must be connected with* the invitees' recreational use of the lands or waters. The Authority's generation of electricity on the land in question—its only commercial activity established by this record—has not been shown to have *any profit-related nexus to the admitted public's presence upon the premises or with its free use of the locus delicti.*[16] In short, there is here no probative material of the profit-related link required by law.

Nor does the record contain evidentiary material of the Authority's deliberate, willful or malicious action toward decedents. In short, no exception from the immunity affordable by the general terms of our RLUA could be made applicable to the claims in suit.

## IV

### THERE IS NO EVIDENTIARY MATERIAL RAISING A COMMERCIAL–ACTIVITIES ISSUE

■ A defendant who moves for summary judgment by interposing an affirmative (absolute) defense against liability must show that there is no substantial controversy over the applicable facts that are material to that defense and that all inferences which may be reasonably drawn from undisputed facts ten-

dered are in the moving party's favor.[17] Once the moving party has made the required showing, the adverse party *must then assume the burden of demonstrating the existence of a material fact that would justify a trial of that issue.*[18]

■ In an appeal from summary judgment, review is always limited to the issues shown by the record to have been *actually presented at nisi prius* and *actually tendered* before the trial judge.[19] For support of their commercial-activity-exception claim the plaintiffs relied below and do so here *solely on the Authority's generation of electricity* in the Grand Lake vicinity—the *locus in quo.* Because they produced *no* evidentiary material *to show the presence upon the critical place of some disputed commercial activity* in addition to the Authority's admitted generation of electricity, there is no need to theorize about its potential legal effect.

## V

### PRUDENCE DICTATES THAT THE ABSTRACT QUESTION—WHETHER THE AUTHORITY IS EXEMPTED FROM LIABILITY BY THE TERMS OF THE GTCA—NOT BE REACHED IN THIS CASE

■ Courts are not allowed to forecast what they might do about an issue that is not before them.[20] It is wise that we

---

16. The Legislature clearly did *not* intend that commercial activity *unrelated to* land/water use by invited guests be a bar to immunity. The offending commercial or other "for-profit" activity that deprives the landowner of RLUA immunity must be connected with the invited public's use of the premises. *Boyd II, supra* note 7 at 580; 2 O.S.1991 § 1301–315(C), *supra* note 8. Within the RLUA's contemplation, it is only the landowner inviting the public for a *free* use of the property, *but* conducting or allowing in the *locus in quo* a for-profit activity *intended to involve* the invited public, who loses the benefit of the Act-conferred immunity. *Boyd II, supra* note 7 at 580.

17. *Martin v. Chapel, Wilkinson, Riggs, and Abney,* Okl., 637 P.2d 81, 84 (1981); *Runyon v. Reid,* Okl., 510 P.2d 943, 946 (1973).

18. *Boren v. Kirk,* Okl., 878 P.2d 1059, 1061 (1994); *Hargrave v. Canadian Valley Elec. Co-op, Inc.,* Okl., 792 P.2d 50, 55 (1990); *Martin, supra*

note 17 at 84; *Weeks v. Wedgewood Village, Inc.,* Okl., 554 P.2d 780, 785 (1976).

19. *Frey v. Independence Fire and Cas. Co.,* Okl., 698 P.2d 17, 20 (1985); *Northrip v. Montgomery Ward & Co.,* Okl., 529 P.2d 489, 494 (1974); *Ajax Contractors, Inc. v. Myatt,* Okl., 424 P.2d 30, 35 (1967); *Board of County Com'rs of Choctaw Co. v. Schuessler,* Okl., 358 P.2d 830, 832 (1960). *See also Dyke v. Saint Francis Hosp., Inc.,* Okl., 861 P.2d 295, 299–300 (1993); *Ind. Nat. Bank v. State Dept. of Human S.,* Okl., 857 P.2d 53, 64 (1993); *Smith v. State, ex rel. Bd. of Regents,* Okl., 846 P.2d 370, 372 n. 6 (1993) (Opala, J., with whom Hargrave and Summers, JJ., joined, dissenting).

20. *"Every judgment must be read as applicable to the particular facts proved or assumed to be proved,* since the generality of the expressions which may be found there are not intended to be expositions of the whole law but govern and are qualified by the particular facts of the case in

remain true to this principle today *and not speculate in gratis dicta concerning the GTCA's effect on the Authority's claimed immunity.*[21] It suffices to hold that the Authority is immune by the RLUA in the same manner as private landowners. It does not matter if (a) the § 155 *exemptions* in the GTCA might *also* protect the Authority or (b) *that the Authority falls within the protective cloak of the GTCA.* To settle either of these *purely academic* issues in the context of this appeal would amount to nothing more than a needless judicial gaze into Odin's well. We elect today to resist the temptation.

## VI

### CONCLUSION

The Authority is immune from liability for plaintiffs' loss *regardless of whether* it is a private person or a governmental entity. This is so because by the provisions of the GTCA the state and any of its political subdivisions bear tort accountability *in the same manner* and to the same extent as a private entity. Neither the Authority's activity on the *situs* of the injury nor any of its acts (or omissions) toward decedents can bring these two claims within any *exception to RLUA-conferred immunity.* Today's holding makes moot the tendered dispute over the Authority's claimed *exemption* from liability under the GTCA.[22]

ON CERTIORARI PREVIOUSLY GRANTED, THE MEMORANDUM OPINIONS OF THE COURT OF APPEALS ARE VACATED AND THE TRIAL COURT'S SUMMARY JUDGMENTS IN CAUSES NO. 79,649 AND NO. 78,183 ARE AFFIRMED.

HODGES, LAVENDER, SIMMS and HARGRAVE, JJ., concur.

ALMA WILSON, C.J., KAUGER, V.C.J., and SUMMERS and WATT, JJ., concur in part and dissent in part.

SUMMERS, Justice, concurring in part and dissenting in part.

In *Boyd v. U.S. ex rel. U.S. Army Corps,* 830 P.2d 577 (Okla.1992) we left unresolved the question of whether the Recreational Use Act (2 O.S.1991 § 1301–315) applies to the State of Oklahoma and its subdivisions. That was because the presence of commercial activity in the park area eliminated any possibility of the Act's availability as a defense, and thus the issue was not before us. Today's opinion resolves the unanswered question in favor of applicability of the Act for the benefit of the Grand River Dam Authority (GRDA),[1] and I agree.

Prior to the enactment of the Governmental Tort Claims Act the GRDA had its own statutory version of a waiver of sovereign immunity for certain types of actions. The GRDA had the right and privilege: "To sue and be sued in its corporate name in contracts, reverse condemnation, tort, equity, mandamus and similar actions...." 82 O.S. 1991 § 862(*l*). The GRDA is liable for "damage caused by said district, its agents,

---

which such expressions are to be found." (Emphasis added.) Lord Halsbury's famous passage in Quin v. Leathem [1901] A.C. 495 at p. 506, quoted in RUPERT CROSS, PRECEDENT IN ENGLISH LAW 37 (1961).

21. *Northeast Okl. Elec. v. Corporation Com'n,* Okl., 808 P.2d 680, 683 (1991); *Westinghouse Elec. v. Grand River Dam Auth.,* Okl., 720 P.2d 713, 718 (1986); *Traders Compress Co. v. Board of Review, Okl. Employment Security Commission,* 203 Okl. 564, 224 P.2d 268 (1950). *See also Application of Goodwin,* Okl., 597 P.2d 762, 765 n. 8 (1979).

22. *See* the terms of 51 O.S.1991 § 155, *supra* note 5.

1. The Grand River Dam Authority is a conservation and reclamation district created by statute. 82 O.S.1991 § 861. Section 861 also states that:

Such district shall be, and is hereby declared to be, a governmental agency of the State of Oklahoma, body politic and corporate, with powers of government and with authority to exercise the rights, privileges and functions hereinafter specified, including control storing, preservation and distribution of the waters of the Grand River and its tributaries, for irrigation, power and other useful purposes and reclamation and irrigation of arid, semiarid and other lands needing irrigation, and the conservation and development of the forests, minerals, land, water and other resources and the conservation and development of hydroelectric power and other electrical energy, from whatever source derived, of the State of Oklahoma.

servants and employees in creating, constructing, maintaining or operating said district to any corporation, partnership, person or individual whose property, either real or personal, within or without said district, ...." 82 O.S.1991 § 862(s). This waiver of sovereign immunity for certain types of actions placed the GRDA in the same position as a private litigant. *Grand River Dam Authority v. Grand–Hydro*, 188 Okl. 506, 111 P.2d 488, 489–490 (1941). As a private litigant a defendant, and therefore the GRDA, is entitled to the protection afforded by the Recreational Use Act.

The same holds true as to the Governmental Tort Claims Act. The Governmental Tort Claims Act incorporates the law applicable to private persons and makes it applicable to the State and its political subdivisions. The Governmental Tort Claims Act states that the State and its subdivisions shall be liable for loss, subject to the limitations of that Act, "if a private person or entity, would be liable for money damages under the laws of this state." 51 O.S.1991 § 153. A private person's liability (and immunity) is determined by application of the Recreational Use Act and thus, so too the liability of the GRDA is determined by application of that Act.

States are divided on this issue. The Supreme Court of Louisiana canvassed the cases and legal articles, and came to the conclusion that those states applying the Recreational Use Act to government agencies did so because in those states a governmental defendant's liability was imposed to the same extent that liability was imposed upon private individuals. *Monteville v. Terrebonne Parish Consolidated Government*, 567 So.2d 1097, 1103 (La.1990). The Tenth and Ninth Circuit federal courts have also stated that the same policy for applying the Recreational Use Act to private persons is present when a government agency is involved. *Jones v. United States of America*, 693 F.2d 1299, 1302 (9th Cir.1982); *Klepper v. City of Milford, Kansas*, 825 F.2d 1440, 1444 (10th Cir.1987). What the Court does today is consistent with 51 O.S.1991 § 153 and those courts that similarly impose governmental liability to the extent that private persons are liable. Thus, I concur with the opinion inso-far as it extends the Recreational Use Act to the state and its subdivisions.

Where I must take leave of the Court's opinion is in its affirmance of the summary judgment. Summary judgment based on the Recreational Use Act is appropriate in a case where the facts are uncontroverted that no "commercial or other activity for profit is conducted on such park area, or any part thereof." 2 O.S.1991 § 1301–315(C). I do not read the evidentiary material before the trial judge as establishing that as an uncontroverted fact. Thus I would leave the GRDA's defense based on an absence of commercial activity for the trier of fact.

I am authorized to state that Chief Justice ALMA WILSON, Vice Chief Justice KAUGER and Justice WATT join in these views.