In the Matter of CHRISTOPHER D. JUDD et al., Respondents, v THOMAS A. CONSTANTINE, as Superintendent of the Division of New York State Police, et al., Appellants.

Third Department, February 1, 1990

APPEARANCES OF COUNSEL

*Robert Abrams, Attorney-General (John Q. Driscoll* and *Peter G. Crary* of counsel), for appellants.

*Hinman, Straub, Pigors & Manning (William P. Golderman* of counsel), for respondents.

## OPINION OF THE COURT

LEVINE, J.

Petitioners, Christopher D. Judd and Michael F. Mergler, began their service as State Troopers on February 16, 1970 and remained in that status beyond April 1, 1984. Petitioners both incurred disabling injuries prior to their completion of 14 years of service as troopers, and, after exhausting periods of paid sick-leave status, were placed on sick leave without pay for periods of approximately seven weeks before returning to active duty. Each claimed entitlement to receive the statutory 14-year longevity increment of $1,112 on April 1, 1984, pursuant to the provisions of Executive Law former § 216-b (3) (c) (1) (as added by L 1982, ch 462, § 3) then in effect. That section granted such an increment when a trooper *"has,* by or after April first, nineteen hundred eighty-two, *completed* [14] years of service", payable "on the first day of the fiscal year following *completion of such service"* (emphasis supplied).

Respondent Comptroller disallowed payment of the increment to petitioners on April 1, 1984 on the ground that they had not yet completed 14 years of service because, in one of such years, their service had been interrupted by being on leave without pay. The Comptroller explained that his office has "always * * * interpreted" the completion-of-years-of-ser-

vice phrase of the statute "as meaning service credit for time in actual pay status".

After unsuccessfully pursuing their remedies under the grievance machinery provided in the State Troopers' collective bargaining agreement, petitioners initiated this proceeding under CPLR article 78 to challenge the Comptroller's determination. Supreme Court ruled in their favor, and respondents now appeal.

Respondents' argument for reversal is, essentially, that the Comptroller has consistently followed a uniform interpretation and application of the various longevity salary increment statutes for State employees to deny service credit for any period in which the employee was on unpaid leave (citing principally, Civil Service Law § 130 [3] [c]). Respondents contend that uniform construction of the longevity increment statutes is desirable, fair and promotes equitable treatment of all persons in State service. Hence, they argue that, since a parallel construction of the completion of service requirement of Executive Law former § 216-b (3) (c) (1) does not conflict with any express provision of the State Troopers' longevity increment statute, the Comptroller's interpretation is reasonable and should be upheld. This remains so, according to respondents, despite the uncontested fact that petitioners were never actually separated from State Police service and, indeed, remained fully subject to the authority of their superiors while on unpaid leave.

In view of the manner in which respondents have posed their argument for reversal, i.e., that the Comptroller's interpretation of the governing statute is reasonable and, therefore, must be upheld even if the statute is reasonably subject to a different construction, the preliminary question before this court is whether this is a case where the administrative agency's interpretation of the statute is entitled to special weight or deference *(see, e.g., Matter of Howard v Wyman,* 28 NY2d 434). Without attempting an exhaustive delineation of all of the instances where judicial deference should be accorded an agency's interpretation of a statute, they would principally include the following: (1) where the statute employs technical terms within the agency's expertise, so that interpretation or application of legislative language entails "understanding of underlying operational practices or * * * evaluation of factual data and inferences to be drawn therefrom" *(Kurcsics v Merchants Mut. Ins. Co.,* 49 NY2d 451, 459); (2) where the general statutory language and legislative his-

tory indicate that the Legislature intended to adopt a broad policy approach to the subject matter of the statute, delegating to the administrative agency comprehensive, interpretive and subordinate policy-making authority, interstitially to "fill in the blanks" consistently with the over-all policy of the statute, either by administrative rule making or case-by-case decisions *(see, e.g., Matter of Levine v Whalen,* 39 NY2d 510, 515-516; *see also, Pittston Stevedoring Corp. v Dellaventura,* 544 F2d 35, 49 [Friendly, J.], *aff'd sub nom. Northeast Mar. Term. Co. v Caputo,* 432 US 249); (3) where the agency participated in the legislative activity leading to the authorizing legislation and the agency's interpretation of the statute is contemporaneous with enactment *(see, Aluminum Co. v Central Lincoln Util. Dist.,* 467 US 380, 390; *Hi-Craft Clothing Co. v National Labor Relations Bd.,* 660 F2d 910, 916); and (4) where the agency's interpretation has been long standing and unchallenged, inducing reliance thereon by those practicing before it *(see, Ferraiolo v O'Dwyer,* 302 NY 371, 376; *see also, National Labor Relations Bd. v Bell Aerospace Co.,* 416 US 267, 274, 275; *Hi-Craft Clothing Co. v National Labor Relations Bd., supra).* The most important underlying principles requiring deference are either when the nature of the legislation is such that the agency has a greater competence in interpreting the statute than the courts *(Kurcsics v Merchants Mut. Ins. Co., supra)* or when the policy-making function necessarily entailed in interpreting broad statutory language has been conferred by the Legislature on the agency and not the courts (5 Davis, Administrative Law § 29:27, at 458 [2d ed]).

None of the foregoing criteria or principles applies here to require any significant deference to the Comptroller's interpretation of the completion of service provision of Executive Law former § 216-b (3) (c) (1). There is nothing in the use of the words or in their statutory context to suggest that the statutory phrase, referring to completion of years of service, was employed in any technical sense apart from its common usage *(see, Matter of Occidental Chem. Corp. v Public Serv. Commn.,* 114 AD2d 149, 153-154, *lv denied* 68 NY2d 608). Likewise, neither the statute nor its legislative history evinces any legislative intent to delegate broad policy-making or interpretive authority upon the Comptroller *(see, supra,* at 153). Indeed, the legislative history discloses that the statute under consideration, as well as many of its predecessors, was enacted to implement a specific collective bargaining agree-

ment negotiated between the State Troopers' bargaining representative and the Governor's Office of Employee Relations (see, Governor's Bill Jackets, L 1982, ch 462; L 1972, ch 87), a factor hardly suggestive that any significant role as interpreter was intended to be conferred upon the Comptroller. There is nothing to indicate that the Comptroller played any part in the statute's enactment. Nor have respondents documented the Comptroller's conclusory claim that the construction was long standing and uniform. This is at least somewhat belied by the conceded fact that, in the case of Judd, payment was approved of his first nine years' service longevity increment on April 1, 1979, despite the occurrence of his period of unpaid leave before that date. Thus, the proper disposition of this appeal is truly a matter of pure statutory construction, involving the traditional tools of analysis of the words used, reference to the legislative history and application of canons of construction, which this court is at least as competent to undertake as the Comptroller (see, Kurcsics v Merchants Mut. Ins. Co., supra).

■ From our analysis, we conclude that Supreme Court correctly ruled that the Comptroller's interpretation of the completion-of-years-of-service requirement of Executive Law former § 216-b (3) (c) (1) was erroneous. Literally, since petitioners were never separated from State Police service as a result of their unpaid leaves, they qualified for the statutory longevity increment on April 1, 1984, "the first day of the fiscal year following completion of [14 years] service" (Executive Law former § 216-b [3] [c] [1]). The Comptroller based his incorporation of the additional requirement that each qualifying year's service must be uninterrupted, without credit for other than paid service, upon the provisions of Civil Service Law § 130 (3) (c). Those provisions, however, expressly are for the purpose of defining "continuous service" (§ 130 [3] [c]), a requirement for qualifying certain classes of State employees (not State Troopers) for longevity increments as specified elsewhere in Civil Service Law § 130 (3). Respondents have not shown, by reference to legislative history or otherwise, why restrictions applicable to the requirement of continuous service for entitlement to longevity increments under Civil Service Law § 130 (3) should be implied in the requirement merely of completion of years of service for entitlement of State Troopers to longevity increments under Executive Law former § 216-b (3) (c) (1).

The inference that the foregoing distinctions in the statu-

tory language as intended to effect differences in eligibility requirements for longevity increments as between State Troopers and other persons in State service is reinforced by reference to a parallel distinction in Executive Law former § 216-b as it existed when petitioners made their claim for the 14th-year longevity increment. Under Executive Law former § 216-b (3) (a) (as added by L 1969, ch 335, § 5) in effect in 1984, certain managerial level members of the State Police were granted longevity increments after reaching their maximum salary levels, but this was conditioned upon the member having "rendered continuous service" for the requisite additional number of years for entitlement to the increment. As previously described, the longevity increment for troopers under Executive Law former § 216-b (3) (c) (1) did not have this requirement.

The conclusion that the differences in statutory language was intentional becomes virtually inescapable when the evolution of State Police longevity increment legislation under Executive Law § 216-b is reviewed. In its initial form, as enacted in 1962 (Executive Law former § 216-b [3], as added by L 1962, ch 212, § 5), *all* members of the State Police from State Trooper to Assistant Superintendent were granted longevity increments after attaining maximum salary levels, but conditioned on having "rendered continuous [years of] service" for the requisite additional years. In 1969, however, Executive Law former § 216-b (3) was amended (L 1969, ch 335, § 5). The amendment retained the continuous service requirement for longevity increments entitlement as to members "other than a trooper" (Executive Law former § 216-b [3] [a], as amended by L 1969, ch 335, § 5). For a trooper, however, the same subdivision granted the first longevity increment merely when the trooper "has completed at least ten years of service as a trooper by April first, nineteen hundred sixty-nine, or at least nine years of service as a trooper by or after April first, nineteen hundred seventy" (former § 216-b [3] [a]). These distinctions were carried forward in each subsequent version of Executive Law § 216-b, through to the provision under consideration here.

Under familiar canons of construction, the foregoing difference in statutory language in the same statute should be given effect *(see, Matter of Albano v Kirby,* 36 NY2d 526, 530; McKinney's Cons Laws of NY, Book 1, Statutes § 236). Also, the inclusion of the continuous service requirement for some members of the State Police other than troopers under Execu-

tive Law former § 216-b is strongly suggestive that troopers were intentionally excluded from that requirement *(see, Matter of City School Dist. v New York State Pub. Employment Relations Bd.,* 74 NY2d 395, 401; McKinney's Cons Laws of NY, Book 1, Statutes § 240). Respondents have not shown any basis from legislative history or otherwise why these rules of construction should not be applied here. Therefore, Supreme Court's annulment of the Comptroller's determination should be affirmed.

CASEY, J. (concurring). While in agreement with the result reached by the majority, I write separately to note my concern over the increasing intrusion of a collateral issue that is often more complex and difficult than the central issue of statutory interpretation raised in proceedings such as the one at bar. The rule which accords judicial deference to an administrative agency's interpretation of a statute *(see, e.g., Matter of Howard v Wyman,* 28 NY2d 434) appears to be an outgrowth of the extrinsic aid to statutory construction based upon the manner in which an ambiguous statute has been interpreted by those who administer it *(see,* McKinney's Cons Laws of NY, Book 1, Statutes § 129). The deference rule, however, is not uniformly applicable to all administrative interpretations *(see, Kurcsics v Merchants Mut. Ins. Co.,* 49 NY2d 451, 459). Thus, as in the case at bar, the courts treat as a threshold issue the question of whether a particular administrative agency's interpretation is entitled to judicial deference, with resolution of this issue often appearing to be more difficult than the question of statutory interpretation raised by the proceeding *(see, Matter of De Mayo v Rensselaer Polytech Inst.,* 74 NY2d 459). In short, what was intended to be an aid to assist the court in its interpretation of an ambiguous statute has created an obstacle which must be overcome before the issue of statutory construction can be addressed.

Since " 'legislative intent is the great and controlling principle' " in any case involving statutory interpretation, the spirit, purpose and objectives of the statute must be considered by the court *(Ferres v City of New Rochelle,* 68 NY2d 446, 451, quoting *People v Ryan,* 274 NY 149, 152). It follows, therefore, that the result in such a case should not depend upon whether a particular extrinsic aid to the construction and interpretation of the statute is applicable *(see, Matter of De Mayo v Rensselaer Polytech Inst.,* 144 AD2d 740, *affd* 74 NY2d 459). It is my view that where, as here, a public officer

has interpreted an ambiguous statute administered by him, that interpretation should serve as a starting point for the court's analysis, but not as a substitute for the court's primary focus on legislative intent, as gleaned from the wording of the statute, an analysis of the statutory scheme and, if necessary, an examination of legislative history *(see, Ferres v City of New Rochelle, supra,* at 451-455). If the administrative interpretation of the statute is not consistent with the spirit, purpose and objectives of the statute, that interpretation should be rejected, irrespective of whether the administrative officer has any special expertise or whether his interpretation has been long standing. Since I agree with the majority's conclusion concerning the legislative intent of the statute at issue here, I concur in the result.

MAHONEY, P. J., KANE and HARVEY, JJ., concur with LEVINE, J.; CASEY, J., concurs in an opinion.

Judgment affirmed, with costs.