In the Matter of the Claim of MAZIE TUCKER, Respondent, v
NEW YORK CITY HEALTH AND HOSPITALS CORPORATION,
Appellant, and SPECIAL DISABILITY FUND, Respondent.
WORKERS' COMPENSATION BOARD, Respondent.

Third Department, February 4, 1993

## APPEARANCES OF COUNSEL

*O. Peter Sherwood, Corporation Counsel* of New York City, New York City *(Jane S. Earle, Francis F. Caputo, Steven M. Scotti* and *John Sweeney* of counsel), for appellant.

*Morris N. Lissauer,* New York City, for Special Disability Fund, respondent.

## OPINION OF THE COURT

LEVINE, J.

Claimant, who was concurrently employed as a licensed practical nurse at Woodhull Medical Center in Brooklyn (hereinafter Woodhull), part of New York City Health and Hospitals Corporation (hereinafter the City), and at Community Hospital, was injured in the course of her City employment at Woodhull on July 18, 1986. The Workers' Compensation Law Judge (hereinafter WCLJ) found claimant to have a causally related permanent partial disability subsequent to May 16, 1987, the date she returned to work at Community Hospital. She testified at her hearing that she has never returned to work at Woodhull because her disability precludes working two jobs.

The WCLJ calculated claimant's combined average weekly wage prior to the accident to have been $624.24, $338.86 from Woodhull and $285.38 from Community Hospital. The WCLJ then applied Workers' Compensation Law § 14 (6) (added by L 1985, ch 416), which provides in pertinent part that: "the employee's average weekly wages shall be calculated upon the basis of wages earned from all concurrent employments covered under this chapter. The employer in whose employment the employee was injured shall be liable for the *benefits that would have been payable if the employee had had no other employment. Any additional benefits resulting from the increase in average weekly wages due to the employee's concurrent employments* shall be payable in the first instance by the employer in whose employment the employee was injured and shall be reimbursed by the special disability fund created

under [Workers' Compensation Law § 15 (8)]" (emphasis supplied).

The WCLJ found that from May 16, 1987 to January 1, 1988 claimant earned an average weekly salary of $385.37 solely from her employment at Community Hospital, and thus suffered a loss of earnings of $238.87 weekly (i.e., $624.24 − $385.37 = $238.87), entitling her to the maximum reduced earnings of $150 for that period (see, Workers' Compensation Law § 15 [3]). Claimant's average wages for Community Hospital for the period of January 1, 1988 to January 1, 1989 were $435.08, with a loss of earnings of $189.16 (i.e., $624.24 − $435.08 = $189.16), and she was awarded reduced earning benefits of $126.11 for that period. The WCLJ concluded that the Special Disability Fund had no responsibility to reimburse the City under Workers' Compensation Law § 14 (6) for payments made by the City for claimant's actual reduced earnings because "the wages lost by claimant were as a result of being unable to do her job with the City of New York, her employer at the time of the injury. The employer is not making any awards other than what it would have been responsible for if there had been no dual employment".

The City sought review on the reimbursement issue. The Workers' Compensation Board agreed with the WCLJ that because claimant's lost earnings from the termination of her employment with the City would have entitled her to the statutory maximum benefit of $150, irrespective of her wages from concurrent employment, she would not be receiving "additional benefits resulting from [such] concurrent employment" (see, Workers' Compensation Law § 14 [6]); thus, the City is not entitled to reimbursement from the Special Disability Fund (see, ibid.).

On appeal, the City argues that its liability for benefits is calculated under Workers' Compensation Law § 14 (6) as if claimant "had had no other employment". Therefore, when claimant went back to work for Community Hospital at wages higher than her prior City wages, she no longer had lost wages under the statutory assumption that her City job was her only employment. Accordingly, the City argues, all of the benefits she received resulted "from the increase in average weekly wages due to [her] concurrent employments" (Workers' Compensation Law § 14 [6]), and the City is entitled to full reimbursement from the Special Disability Fund. We disagree.

Although the City's interpretation of the foregoing provision

of Workers' Compensation Law § 14 (6) is plausible, it is equally plausible to interpret it, as the Board has done, as merely placing a ceiling on the liability of the employer in whose employment the claimant's injury occurred to pay benefits only on that portion of the claimant's total lost wages equivalent to the average weekly wages paid by that employer when the injury occurred. The latter construction is more consistent with the legislative history of Workers' Compensation Law § 14 (6). That section's primary purpose was to correct the harsh and unfair result of then-existing law when a worker "is injured while working in a low-paying, part-time job and * * * becomes disabled from his or her full-time job as well" (Mem of Workers' Compensation Bd, 1985 McKinney's Session Laws of NY, at 3095). Under those circumstances, "[u]nless the employments are similar in nature, the employee will receive no compensation for the wages he or she loses from the full-time employment", despite suffering an actual loss of those earnings because of a work-related injury *(ibid.)*. The provision in Workers' Compensation Law § 14 (6) under consideration here was inserted to insure that the employer in whose employment the injury occurred would not be liable for greater benefits as a result of the amendment than it would have paid under the previous law. Thus: "[t]he employer in whose employment the employee sustained his or her injury will pay all compensation benefits to the employee and be entitled to be reimbursed by the Special Disability Fund of the Board *for the additional benefits resulting from the increase in the employee's average weekly wage* due to earnings in the employee's other employments" (Letter from General Counsel to Workers' Compensation Bd, July 1, 1985, Bill Jacket, L 1985, ch 416 [emphasis supplied]). And, "[a]ny disadvantage to an employer *resulting from the payment of higher benefits* will be remedied by the reimbursement of the employer or carrier from the special disability fund" (Mem of Dept of Labor, July 3, 1985, Bill Jacket, L 1985, ch 416 [emphasis supplied]).

Under the Board's interpretation of Workers' Compensation Law § 14 (6), the City, in fact, will not be liable for more benefits than it would have under the law as it stood before section 14 (6) was enacted. Claimant was employed as a licensed practical nurse in both of her employments. Under prior law, such similar employment would have required her lost wages to be calculated on an average weekly wage aggregating the wages from both employments, for which the City, as the employer where the injury occurred, would be entirely

liable without any provision for reimbursement *(see, Matter of Lepkowski v Chautauqua County Legislature,* 58 AD2d 704; *Matter of Michaels v Friedman Binding & Trimming Co.,* 51 AD2d 1088). Thus, in no event would the City's liability to pay benefits under the Board's interpretation of section 14 (6) be greater than the City's liability to pay such benefits under former law.

Even if claimant's two employments were dissimilar, the City's liability to pay benefits to claimant is not greater under the Board's construction of Workers' Compensation Law § 14 (6) than it would have been prior to the enactment of that section. Under prior law, if the concurrent employments were dissimilar, claimant's average weekly wage for benefit purposes would have been based solely on her wages paid by the City, in whose employment she was injured *(see,* Minkowitz, Practice Commentaries, McKinney's Cons Laws of NY, Book 64, Workers' Compensation Law § 14, at 471). As a corollary, however, the City would not have been entitled to offset claimant's wages from her renewed employment at Community Hospital in determining her average weekly wages for purposes of fixing the City's liability to pay benefits *(see, Matter of Gelbman v Cornell Maintenance Corp.,* 97 AD2d 577, 578). Thus, in this scenario, the City's liability under prior law would have been either the same or greater than under the Board's interpretation of Workers' Compensation Law § 14 (6).

By contrast, the City's interpretation of the pertinent statutory provision would be likely generally to shift primary liability for payment of benefits from the employer in whose part-time employment the claimant was injured to the Special Disability Fund in cases under section 14 (6) in which the claimant is permanently partially disabled, a result not shown to have been intended in the legislative history of its enactment. Thus, the Board's construction, being more consistent with the legislative intent, should control *(see, Ferres v City of New Rochelle,* 68 NY2d 446, 451).

A second reason for our adherence to the Board's interpretation of Workers' Compensation Law § 14 (6) is that the Board drafted and was the original proponent of this legislation. This entitles the Board's interpretation to some judicial

deference *(see, Hi-Craft Clothing Co. v National Labor Relations Bd.,* 660 F2d 910, 915; *Matter of Judd v Constantine,* 153 AD2d 270, 273).

WEISS, P. J., CREW III, MAHONEY and HARVEY, JJ., concur. Ordered that the decision is affirmed, without costs.