■ In the Matter of the Claim of ROBIN RYAN, Respondent, v METROPOLITAN PROPERTY & LIABILITY et al., Appellants. SPECIAL FUNDS CONSERVATION COMMITTEE, Respondent. WORKERS' COMPENSATION BOARD, Respondent. [662 NYS2d 610] —Carpinello, J. Appeal from a decision of the Workers' Compensation Board, filed July 27, 1995, which ruled that the workers' compensation insurance carrier was not entitled to any reimbursement from the Special Funds Conservation Committee under Workers' Compensation Law § 14 (6).

Claimant, employed as both a waitress at a restaurant and as a mail clerk with Metropolitan Property & Liability (hereinafter Metropolitan), sustained a stress-related injury on May 11, 1988 while in the latter's employ. After her workers' compensation case was established for accident, notice and causal relationship, the Workers' Compensation Law Judge (hereinafter WCLJ) determined that there was covered concurrent employment with the restaurant (see, Workers' Compensation Law § 14 [6]) and calculated claimant's average weekly wage as $491.11, $251.11 from her employment with Metropolitan and $240 from her employment with the restaurant. Because the claim was being made for concurrent employment, Metropolitan's workers' compensation insurance carrier, Travelers/Aetna Property & Casualty (hereinafter the carrier), filed a notice pursuant to Workers' Compensation Law § 14 (6) and § 15 (8) seeking reimbursement from the Special Funds Conservation Committee.

The Workers' Compensation Board ultimately ruled that claimant sustained a permanent partial disability and awarded her compensation from March 2, 1990 to March 24, 1993 at a $150 weekly reduced earnings rate and authorized a lump-sum nonschedule adjustment in the amount of $46,800, allocated at the $150 weekly reduced earning rate. After the case was restored to the trial calendar solely on the issue of reimbursement under Workers' Compensation Law § 14 (6), the WCLJ directed that the Special Funds reimburse the carrier for 62% of the lump sum paid, apparently based on evidence that, after the date of the injury, claimant had earned wages of $165 per week working as a waitress for a third employer (not the restaurant), and that the reduced earnings chargeable to the

carrier was only $57.41.* The WCLJ, therefore, found that the difference between the $150 weekly reduced earnings rate allocated in the lump-sum award and the carrier's liability of $57.41 constituted the Special Funds' responsibility, i.e., 62% of the lump-sum award.

The Special Funds appealed and the Board rescinded the WCLJ's decision, finding that the carrier had a maximum liability of $150 for a partial disability and, inasmuch as the lump-sum nonschedule adjustment was allocated at a $150 weekly reduced earnings rate, the entire award should be charged against the carrier. The carrier and Metropolitan now appeal. In our view, the Board's decision pertaining to the carrier's liability was proper (*see*, *Matter of Tucker v New York City Health & Hosps. Corp.*, 188 AD2d 34).

Workers' Compensation Law § 14 (6) provides, in pertinent part, that: "If the injured employee is concurrently engaged in more than one employment at the time of injury, the employee's average weekly wages shall be calculated upon the basis of wages earned from all concurrent employments covered under this chapter. The employer in whose employment the employee was injured shall be liable for the benefits that would have been payable if the employee had had no other employment. Any additional benefits resulting from the increase in average weekly wages due to the employee's concurrent employments shall be payable in the first instance by the employer in whose employment the employee was injured and shall be reimbursed by the special disability fund". We have interpreted this statute as evidencing the Legislature's intent "to insure that the employer in whose employment the injury occurred would not be liable for greater benefits as a result of the amendment than it would have paid under the previous law" (*Matter of Tucker v New York City Health & Hosps. Corp., supra*, at 37). Under the previous law, benefits were calculated based upon "the average weekly wage in the employment in which the injury occurred * * * [and] wages from other employment were used only if the second employment was found to be 'similar' to the employment in which the injury occurred" (*Matter of Abellon v Nyack Hosp.*, 190 AD2d 128, 130, quoting Letter from General Counsel to Workers' Compensation Board, Bill Jacket, L 1985, ch 416). Here, because claimant was employed in concurrent but "dissimilar" jobs (mail clerk versus waitress),

---

* This figure was apparently based on an average weekly wage earned from Metropolitan of $251.11 minus the $165 average weekly wage earned from the third employer, multiplied by 66²/₃% pursuant to Workers' Compensation Law § 15 (3).

claimant's lost wages would have been calculated based solely upon the wages paid by Metropolitan, in whose employment she was injured (*Matter of Tucker v New York City Health & Hosps. Corp.*, *supra*, at 38). Under the prior law, when she returned to "dissimilar" employment as a waitress with the third employer, Metropolitan would not have been entitled to offset these earned wages in determining her average weekly wages for purposes of fixing its liability to pay benefits (*id.*, at 38). Rather, Metropolitan's liability under prior law would have been $251.11, reduced to the statutory maximum of $150 (*see*, Workers' Compensation Law § 15 [6]), precisely the same as its liability under Workers' Compensation Law § 14 (6). Therefore, contrary to the carrier's argument, the Board's interpretation would not cause Metropolitan to be liable for more benefits under Workers' Compensation Law § 14 (6) than it would have under prior law. Accordingly, the Board's decision is affirmed.

Cardona, P. J., Mikoll, Mercure and Yesawich Jr., JJ., concur. Ordered that the decision is affirmed, without costs.

