OPINION OF THE COURT
Mercure, J.P.
Petitioners commenced this combined proceeding and action to challenge an apportionment of operation and maintenance costs adopted by respondent Hudson River-Black River Regulating District (hereinafter the District) and approved by respondent Department of Environmental Conservation (hereinafter DEC). The District is a public benefit corporation that maintains and operates dams, reservoirs and appurtenant facilities for the purpose of regulating the flow of the upper Hudson River and the Black River (see ECL 15-2103). The District operates two river regulating reservoirs in the Hudson River area[1] — the Great Sacandaga Lake, located in Fulton, Hamilton and Saratoga Counties, and the Indian Lake Reservoir, located in Hamilton County. The most significant of the District’s operations is the Conklingville Dam, which controls the flow of water from the Great Sacandaga Lake to reduce flooding and stabilize the flow of the Sacandaga River and the Hudson River for hydroelectric power generation.
The District is required to apportion its capital, operation and maintenance costs “less the amount which may be chargeable to the state, among the public corporations and parcels of real estate benefited, in proportion to the amount of benefit which will inure to each such public corporation and parcel of real estate by reason of such reservoir” (ECL 15-2121 [2]). For approximately 80 years beginning in the 1920s, the assessed costs of the District and its predecessors were primarily apportioned among downstream hydropower companies that derived “head-water benefits” from the operation of the reservoirs (see Board of Hudson Riv. Regulating Dist. v Fonda, Johnstown & Gloversville R.R. Co., 249 NY 445, 452-453 [1928]; Matter of Niagara Mohawk Power Corp. v State of New York, 300 AD2d 949, 950 [2002]). A small portion of the cost was allocated to five *64 downstream municipalities. In connection with the relicensure of a power plant located adjacent to the Conklingville Dam, the Federal Energy Regulatory Commission (hereinafter FERC) determined that the District was required to obtain a license for both the Conklingville Dam and the Great Sacandaga Lake (see Niagara Mohawk Power Corp. v Hudson Riv.-Black Riv. Regulating Dist., 673 F3d 84, 88-89 [2012]). The District obtained a license in 2002 and, thereafter, the operator of a downstream hydroelectric plant challenged the District’s apportionment of its costs among hydroelectric energy producers as contrary to the Federal Power Act. In 2008, the United States Court of Appeals for the District of Columbia Circuit concluded both that the Federal Power Act (see 16 USC § 803 [f]) preempted state law regarding the assessment on headwater benefits to hydropower projects and that the District, as a FERC licensee, is precluded from apportioning its operational costs— which constitute the majority of its expenses — among downstream hydropower companies (Albany Eng’g Corp. v Federal Energy Regulatory Commn., 548 F3d 1071, 1076-1079 [2008]).
Following invalidation of its prior apportionment mechanism, the District concluded that flood protection of communities downstream from the Conklingville Dam constituted the most direct and clearly defined benefit — apart from headwater benefits — resulting from its operations (see generally Board of Hudson Riv. Regulating Dist. v Fonda, Johnstown & Gloversville R.R. Co., 249 NY at 452-453; Board of Black Riv. Regulating Dist. v Ogsbury, 203 App Div 43, 44-45 [1922], affd no op 235 NY 600 [1923]). In 2010, the District therefore adopted a schedule apportioning approximately $4.5 million in operating and maintenance costs among petitioners, the five counties within its jurisdiction that are located downstream from the Conklingville Dam.[2] DEC approved the apportionment, prompting this combined CPLR article 78 proceeding and declaratory judgment action alleging that, among other things, the methods employed in adopting the apportionment fall short of the relevant statutory requirements. Following joinder of issue, Supreme Court denied petitioners’ request for a judgment invalidating the apportionment and declaring it unenforceable and void, and granted respondents’ motion for summary judgment dismissing the petition/complaint. Petitioners appeal, and we now modify and remit.
*65 As noted above, the District is statutorily required to apportion the cost of a reservoir, less the amount “chargeable to the state,” among public corporations — such as petitioners — and parcels of real estate “in proportion to the amount of benefit which will inure to each such public corporation and parcel of real estate by reason of such reservoir” (ECL 15-2121 [2]; accord Board of Hudson Riv. Regulating Dist. v Fonda, Johnstown & Gloversville R.R. Co., 249 NY at 453). With respect to the latter requirement that public corporations and owners of individual parcels be charged in proportion to the benefit received, the parties advance competing interpretations of the statute regarding both the nature of the “benefit” contemplated and which public corporations and parcels are to be held responsible for the District’s costs. We conclude that the District’s interpretation in this regard is reasonable and entitled to deference, and it should thus be upheld. In addition, the methodology employed by the District in performing the detailed apportionment calculation was neither irrational nor inconsistent with the statute. We agree with petitioners, however, that the apportionment cannot be sustained because the District failed to comply with the express statutory requirement that the amount “chargeable to the state” be deducted from the District’s costs prior to apportioning and charging other benefited parties with the remaining costs. Inasmuch as the parties are in agreement that the statute requires the benefit to the state to be deducted prior to apportionment and the record evinces that the District failed to do so, we remit for that purpose, as explained below.
In providing for apportionment after deducting the amount chargeable to the state, the statute requires that the District’s board, or a majority of its members, “shall view the premises and public corporations benefited” (ECL 15-2121 [4]). The apportionment must be in writing and include, in addition to the name of each public corporation, a brief description of each parcel of real estate benefited, the name of its owner if ascertainable, and the proportion of the cost chargeable to each parcel and public corporation (see ECL 15-2121 [2]). After certification to and approval by DEC, the District is to file a copy of the apportionment with the county clerk of each county in which such premises or corporations are located, and provide notice of a public hearing wherein the District will meet with all parties that are interested or aggrieved by the apportionment (see ECL 15-2121 [4], [5]).
*66 Petitioners argue that the 2010 apportionment is inconsistent with ECL 15-2121 because the District failed to (1) apportion its costs among private owners of benefited parcels in addition to public corporations, (2) physically view "the benefited parcels, (3) describe and identify each benefited parcel for the purpose of levying and assessing the apportionment, and (4) deduct the portion of the costs chargeable to the state. Apart from their argument regarding the failure to account for the portion of the costs that is chargeable to the state, the crux of petitioners’ challenge is that the District’s apportionment contravenes the statutory language in section 15-2121 regarding privately held parcels of real estate benefited by the reservoirs. With respect to this aspect of petitioners’ challenge, we agree with Supreme Court that the District’s interpretation of this “cumbersome and less than clear legislation” is neither irrational nor unreasonable.
Historically, the District has interpreted ECL 15-2121 as permitting it to apportion costs among those public corporations and privately held parcels that receive the most significant, ascertainable benefits.[3] In contrast, petitioners would read the statute as requiring apportionment among all public corporations and privately held parcels of real estate that receive a benefit. Petitioners argue that the District’s interpretation is not entitled to deference because, they maintain, the statute is clear and unambiguous, presenting a question of pure statutory reading and analysis.
As petitioners assert, past failures to comply with unambiguous statutory directives cannot excuse current statutory violations or misinterpretations. Nonetheless, when a statute may be read as susceptible to more than one reasonable interpretation, “judicial deference should be accorded an agency’s interpretation of a statute ... [if] the agency’s interpretation has been long standing and unchallenged, inducing reliance thereon” (Matter of Judd v Constantine, 153 AD2d 270, 272-273 [1990] [internal citations omitted]). Further,
“[c]ourts regularly defer to the governmental agency charged with the responsibility for administration *67 of [a] statute in those cases where interpretation or application involves knowledge and understanding of underlying operational practices or entails an evaluation of factual data and inferences to be drawn therefrom, and the agency’s interpretation is not irrational or unreasonable” (Matter of New York State Superfund Coalition, Inc. v New York State Dept. of Envtl. Conservation, 18 NY3d 289, 296 [2011] [internal quotation marks and citation omitted]).
*66 “ ‘[b]enefit or benefits’ shall be interpreted to include benefits to real estate, public or private, to municipal water supply, to navigation, to agriculture and to industrial and general welfare by reason of the maintenance and operation of a regulating reservoir, whether such benefit shall inure to a person, a public corporation or the state” (ECL 15-2101 [3]).
*67 Even in the absence of statutory language that is technical, “deference is appropriate where the question is one of specific application of a broad statutory term” (Matter of O’Brien v Spitzer, 7 NY3d 239, 242 [2006] [internal quotation marks and citation omitted]; see Matter of Reconstruction Home & Health Care Ctr., Inc. v Daines, 65 AD3d 786, 787 [2009], lv denied 14 NY3d 706 [2010]; Matter of Judd v Constantine, 153 AD2d at 273).
Here, the parties’ arguments present alternative interpretations of statutory language that is reasonably susceptible to more than one meaning regarding the nature of the benefit to public corporations and privately held parcels upon which the apportionment is to be conducted. That statutory language— the dictate of ECL 15-2121 (2) that apportionment be made “among the public corporations and parcels of real estate benefited, in proportion to the amount of benefit which will inure to each such public corporation and parcel of real estate”— addresses the implementation of a highly detailed apportionment procedure, and its application necessarily implicates the District’s specialized expertise and agency knowledge in evaluating the relevant factual data and inferences to be drawn therefrom. In addition, the District’s interpretation of this critical statutory language — as permitting it to apportion against only those parcels or public corporations that receive the most substantial and ascertainable benefits, rather than apportioning against all affected parcels and public corporations — has been both consistent and longstanding, having been a matter of public record since the 1920s. Indeed, the Court of Appeals addressed the interpretation of this language by the District’s predecessor as early as 1928 in rejecting the argument that the apportionment of 95% of costs on “private mill owners” and only 5% on five municipalities indicated that “the actual project of a power plant” or “power development is the primary purpose which the [District’s predecessor] had in view” (Board of Hud *68 son Riv. Regulating Dist. v Fonda, Johnstown & Gloversville R.R. Co., 249 NY 445, 453 [1928], supra). The Court explained that the primary purpose was the promotion of public health and safety, and the apportionment simply reflected the fact that “[t]he increased advantages derived by manufacturers can be measured in money. Salutary results to public health and safety are difficult, if not impossible, to appraise in terms of cash” (id.).
Thereafter, the interpretation of the statute as allowing the apportionment of 95% of costs among hydroelectric power companies and other entities such as mills that derive headwater benefits — i.e., the most substantial benefit that is readily measurable — remained consistent for approximately 80 years. Similarly, while the District is no longer permitted by federal law to apportion against hydroelectric power companies, its current apportionment mechanism continues to limit the reach of the statute to those entities that receive the most substantial, readily measurable benefits. Given these circumstances, we conclude that the District’s interpretation of the statute is entitled to deference and, because it is rational, that interpretation must be upheld (see Matter of Brooklyn Assembly Halls of Jehovah’s Witnesses, Inc. v Department of Envtl. Protection of City of N.Y., 11 NY3d 327, 334 [2008]). Contrary to petitioners’ argument, the United States Court of Appeals for the District of Columbia Circuit did not invalidate the District’s reading of the statute as irrational or otherwise address the merits of that interpretation. Rather, the Court concluded that federal law preempted state law with respect to FERC licensees and precluded the District from apportioning its operational costs on downstream hydropower projects (see Albany Eng’g Corp. v Federal Energy Regulatory Commn., 548 F3d 1071, 1076-1079 [2008], supra; see also Niagara Mohawk Power Corp. v Hudson Riv.-Black Riv. Regulating Dist., 673 F3d 84, 95-96 [2012], supra).
Similarly, petitioners misread this Court’s precedent in asserting that we determined that the District’s interpretation was not entitled to deference in a decision holding that Niagara Mohawk Power Corporation had stated causes of action — sufficient to survive a motion to dismiss — regarding whether the District’s 2000-2001 assessment was arbitrary and capricious or in violation of the Equal Protection Clauses of the US and NY Constitutions (Matter of Niagara Mohawk Power Corp. v State of New York, 300 AD2d 949, 954-955 [2002], supra). In fact, we *69 expressly declined to render any opinion regarding the likelihood of success of the claims that the District had acted arbitrarily in apportioning costs (id. at 955), noted the District’s discretion in performing apportionments (id. at 953-954), and concluded that any analysis of whether a parcel was “benefited” within the meaning of ECL 15-2101 (3) was beyond the scope of our decision (id. at 954 n). Unlike the procedural context presented in Niagara Mohawk Power Corp. v State of New York (supra), this appeal squarely raises the question of whether the District’s interpretation is entitled to deference, and we conclude that deference is warranted.
Moreover, as respondents argue, the alternative interpretation of the statute advanced by petitioners would lead to objectionable consequences in contravention of basic principles of statutory construction. “Although statutes will ordinarily be accorded their plain meaning, it is well settled that courts should construe them to avoid objectionable, unreasonable or absurd consequences” (Long v State of New York, 7 NY3d 269, 273 [2006] [citations omitted]; see Matter of Medical Socy. of State of N.Y. v State of N.Y. Dept. of Health, 83 NY2d 447, 451-452 [1994]; McKinney’s Cons Laws of NY, Book 1, Statutes § 141). In essence, petitioners interpret ECL 15-2121 as requiring the District to view, describe and apportion against each individual parcel of land within the Hudson River floodplain, as opposed to apportioning against only the individual parcels and public corporations that receive the most significant benefits. In practical terms, petitioners’ interpretation would require a majority of the District’s board members to perform site visits to thousands of parcels on 3.2 million acres of land and describe each parcel, without regard to the costs that such an undertaking would entail. Inasmuch as this requirement has remained in the statute since the 1920s, petitioners’ reading of section 15-2121 necessarily implies that the Legislature contemplated these site visits to millions of acres of wilderness when creating the District’s predecessors — despite the remote and inaccessible nature of many of the parcels at that time. Even absent deference to the District, then, the practical implications of petitioners’ interpretation of the statute require its rejection; the courts will not “impute to lawmakers a futile and frivolous intent . . . [or] interpret a statute to require an impossibility” (McKinney’s Cons Laws of NY, Book 1, Statutes § 141, Comment, at 282-283).
In contrast to the hardship and objectionable consequences that petitioners would have us impose, the District’s longstand *70 ing interpretation required that it visit, view and describe five municipalities, a few dozen hydropower facilities and undeveloped parcels on which hydropower could be generated, as well as any additional hydroelectric “powers” that were “developed after [the initial] apportionment” was made (ECL 15-2121 [7]). Inasmuch as federal law prohibits the District from apportioning costs among hydroelectric power companies (Albany Eng’g Corp. v Federal Energy Regulatory Commn., 548 F3d at 1076-1079;; Niagara Mohawk Power Corp. v Hudson Riv.-Black Riv. Regulating Dist., 673 F3d at 95-96), the District rationally concluded that the requirement of viewing these individual, hydropower-generating parcels is now moot.[4]
Rather, after consideration of various benefits, including increased property values, recreation and flow augmentation, the District determined that flood protection is the most substantial, clearly defined benefit of the reservoirs (see generally Board of Hudson Riv. Regulating Dist. v Fonda, Johnstown & Gloversville R.R. Co., 249 NY 445, 452-453 [1928], supra). The District concluded that petitioners receive a more substantial benefit than any individual parcel, and apportioned costs among the five counties downstream of the Conklingville Dam. Although the apportionment is ultimately based on the flood protection received by each county as a whole, the District employed a method of calculation based on property values in order to compare the relative benefit received by petitioners by use of a common variable — i.e., the value of the property affected.
Specifically, the District used a mapping analysis to compute the total market value of real property in each county that would be in the 100-year floodplain, without the Conklingville Dam. It is undisputed that all such property receives at least some benefit as a result of the operation of the Conklingville Dam. The District considered the alternative methodology urged by petitioners in calculating the apportionment — aggregating the value of the benefit directly to individually owned parcels in the floodplain, as opposed to each county as a whole — but rejected that method on the ground that it did not accurately represent the flood protection benefit to the greater community, which avoids the loss of public infrastructure to flooding. The *71 District chose to apportion at the county level based upon its determination that grouping together the towns, cities and villages within each county minimized the potential for disparate treatment of individual parcels, neighborhoods or municipalities. As counsel for DEC noted in reviewing the apportionment, the District’s method may not be the best or only method, but it is consistent with the statute, which does not specify a particular methodology or the factors that must be considered. Accordingly, in our view, the method chosen by the District cannot be deemed arbitrary and capricious.
Aside from their argument that benefits to the state were required to be deducted prior to apportionment of the remaining costs, petitioners’ remaining challenges require little further discussion. We reject their equal protection claim, which is based upon the argument that the District arbitrarily assessed costs upon only 5 of the 12 counties within its jurisdiction. The seven counties not included in the apportionment are not located downstream from the Conklingville Dam and, thus, are not similarly situated to petitioners because they do not receive flood protection from its operation (see Bower Assoc. v Town of Pleasant Val., 2 NY3d 617, 630-631 [2004]). Nor does the record support petitioners’ claims that the District violated the Open Meetings Law and deprived them of a meaningful opportunity to be heard regarding the apportionment, or that DEC failed to exercise appropriate regulatory authority in approving the apportionment. Further contrary to petitioners’ contentions, the statute permits levy and assessment directly against a county (see ECL 15-2123 [3]).
Accordingly, we conclude that the District’s interpretation of the statute as permitting it to limit apportionment to those public corporations or parcels receiving the most significant and readily ascertainable benefits, as well as the particular methodology employed to calculate the apportionment, are consistent with the statute. Notwithstanding our conclusion in that regard, however, we agree with petitioners that the District violated ECL 15-2121 by failing to deduct the benefits to the state derived from the reservoirs prior to apportioning the remaining costs.
Although the statute does not mandate that any specific methodology or benefit be considered, it does expressly require that costs are to be assessed in proportion to the benefit received “less the amount which may be chargeable to the state” (ECL 15-2121 [2], [3]). Unlike the statutory language discussed at *72 length above, the parties offer no competing interpretations of the language regarding the deduction of the benefits to the state, and “[t]here is nothing in the use of the words or in their statutory context to suggest that the statutory phrase . . . was employed in any technical sense apart from its common usage” (Matter of Judd v Constantine, 153 AD2d 270, 273 [1990], supra). Put differently, there is no indication that the District is required to employ a technical or “specific application of a broad statutory term” (Matter of O’Brien v Spitzer, 7 NY3d 239, 242 [2006], supra [internal quotation marks and citation omitted]) in complying with the directive that it deduct the amount chargeable to the state from its costs prior to apportionment. While the calculation of the actual amount chargeable to the state is likely to be a complex, technical undertaking in itself, the statutory mandate that the benefit must be, in fact, considered and deducted is unambiguous.
The District argues that it did consider state-derived benefits but rationally concluded that those benefits were de minimis. A review of the record, however, supports that assertion only to the extent of demonstrating that the District considered the benefit to the state based upon the diversion of flow to the Champlain canal and determined that particular benefit to be minimal. In contrast to its extensive arguments before us and the proof in the record regarding the rationale for selecting flood protection benefits — from among several possibilities — in apportioning against public corporations and parcels of real estate, the District provides no explanation for why it considered the diversion of flow to the Champlain canal as the only potential benefit to the state. There is no indication, for example, that the District considered whether and to what extent the state receives flood protection as a result of the operation of the Conklingville Dam — the same benefit that the District itself concluded was the most substantial and readily ascertainable benefit arising from the Dam. Similarly, the District provides no explanation in its submissions on this appeal regarding why it declined to consider the proportional flood protection benefit to state property despite the presence of numerous state roads, bridges and other infrastructure, as well as state parks located throughout the counties.[5] In light of the undisputed presence of a substantial amount of state property *73 within the District’s jurisdiction and the District’s conclusion that flood protection is the proper benefit upon which to conduct apportionment, its failure — without explanation — to consider this benefit to the state strikes us as irrational.
Nor is there any evidence that the District considered or calculated any other benefits to the state. We note that the record contains both a memorandum from counsel for DEC indicating that the amount chargeable to the state for flood protection remained undetermined and a recommendation from the District’s general counsel that it determine whether to seek an assessment from the state, even though it had declined to do so historically. Although this issue was thereby brought to the District’s attention and, despite the express statutory requirement that the amount chargeable to the state be deducted prior to conducting the apportionment, the District does not now claim or provide us with evidence that it undertook this step in any meaningful fashion. Rather, the District argues that its failure to deduct the benefits inuring to the state is merely a reflection of “practical reality” because, while the statute provides for the use of an appropriation from the state, the District has no authority to compel an appropriation from the Legislature.
The fact that the Legislature has historically refused to make such appropriations provides neither this Court nor respondents with a basis to disregard the express statutory mandate to deduct the benefits to the state from the apportionment.[6] While the District’s objection regarding the Legislature’s recalcitrance to appropriate the funds necessary for the District’s continued operation is not without force, “the plain language of a statute may not be overridden to avoid an undesirable result in a particular situation” (McKinney’s Cons Laws of NY, Book 1, Statutes § 141, Comment, at 283). Where “the terms of a statute are plain and within the scope of legislative power, . . . the remedy for a harsh law is not in strained interpretation by the [Jjudiciary, but rather its amendment or repeal by the Legislature” (Finger Lakes Racing Assn. v New York State Racing & Wagering Bd., 45 NY2d 471, 480 [1978]). There is no room for interpretation of the statute’s express obligation that the *74 District deduct from the apportionment “the amount which may be chargeable to the state” (ECL 15-2121 [2], [3]). Therefore, inasmuch as the District has failed to meet that obligation, we are now constrained to remit for that purpose.
Rose, Malone Jr., Garry and Egan Jr., JJ., concur.
Ordered that the judgment is modified, on the law, without costs, by reversing so much thereof as granted respondents’ motion dismissing the third and fourteenth causes of action to the extent that said causes of action allege that respondents failed to consider and reduce the total amount to be apportioned by the amount chargeable to the state; motion denied, apportionment declared invalid to that extent, and matter remitted to respondents for further proceedings not inconsistent with this Court’s decision; and, as so modified, affirmed.

. Twelve counties lie partially or wholly within the District — Albany, Columbia, Essex, Fulton, Greene, Hamilton, Rensselaer, Saratoga, Schenectady, Schoharie, Warren and Washington — which constitutes approximately 5,000 square miles.

. Specifically, the District apportioned $1,748,166.66 to Albany County, $961,675.78 to Rensselaer County, $1,270,897.53 to Saratoga County, $297,216.83 to Warren County and $175,249.08 to Washington County.

. The statute separately provides that

. As noted above, the statute provides that, before making the apportionment, the District must “view the premises and public corporations benefited” (ECL 15-2121 [4] [emphasis added]). Petitioners assert that the District was required to view every individual parcel benefited.

. Petitioners assert that within their geographical limits, there are over 800 bridges and 5,300 miles of state highway that receive flood protection *73 benefits.

. Despite our modification of Supreme Court’s judgment in this respect, we agree with the court that legislative examination of the statutes governing apportionment is long overdue.